[Nos. 29000-2-I; 29001-1-I.   Division One.   June 20, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. ADAM L. BARTLETT, *Appellant*.

*Andrew P. Zinner* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Donna L. Wise, Deputy,* for respondent.

SCHOLFIELD, J. — In this consolidated appeal, Adam L. Bartlett challenges the judgment and sentence entered against him on August 12, 1991, for one count of second degree felony murder. He also appeals the judgment and

sentence entered against him the same day for one count of second degree assault and second degree criminal mistreatment. He argues that the trial court committed reversible error by entering the felony murder conviction because the predicate felony was the second degree assault conviction and the two crimes should have merged under the merger doctrine. He also argues that the evidence was insufficient to support his conviction of second degree criminal mistreatment and the trial court erred by imposing an exceptional sentence of 432 months. We affirm.

## FACTS

On the night of November 6, 1990, Adam Bartlett was taking care of his 3-week-old son Brandon, while the baby's mother, Teri Bartlett, worked the late shift at a convenience store. When Teri left for work at 9 p.m., Brandon was sleeping and there was nothing unusual about his appearance. At 1 a.m., Adam Bartlett telephoned Teri and told her Brandon was "breathing funny". Teri could hear the baby moaning a bit in the background, and she asked if she should come home. Adam said no because they needed the money from her job. He did not think it was necessary to call a 24-hour nurse, but he gave Brandon a warm bath at Teri's suggestion.

Adam called Teri again around 2 a.m. because after the warm bath Brandon appeared to have stopped breathing. Adam sounded scared to Teri. He gave Brandon a cool bath and the baby's breathing improved. Adam told Teri she should not leave work. However, at 3:30 a.m., Adam called Teri a third time to tell her Brandon's breathing was shallow and sporadic and asked her to find a replacement and come home.

When she arrived home at 6 a.m., Teri found Brandon and Adam both sleeping. She gave Brandon a bath and, though he never awoke, he started gulping for air. She woke Adam and said she wanted to go to the hospital, which was 3 minutes from their home by car, but he wanted to sleep. Teri waited a while longer and continued to stay with Brandon,

and when Brandon stopped breathing normally and began gasping for air, she told Adam they had to go to the hospital immediately. Adam tried unsuccessfully to perform CPR on the baby before they left. While on the way there, Teri also performed CPR on the child.

At Highline Hospital's emergency room, Adam filled out the paperwork while Teri stayed with Brandon. When the emergency room admitting clerk asked Adam what had happened to Brandon, Adam said, "The damn thing kept me up all night." Brandon was airlifted to Harborview Hospital, and the police questioned Adam about what happened. In his written statement to the police, Adam explained he had been feeding Brandon at 10 p.m. and Brandon began to choke. Adam "bounced [the child] off his hand" for 2 seconds and Brandon resumed eating. At 1 a.m., Brandon awoke and Adam noticed the baby's breathing was "a little different", so he called Teri. He did not call 911 because he believed he could not afford to. He said Brandon had not fallen and had not been bumped. Adam was arrested and charged by amended information with one count of second degree assault and one count of second degree criminal mistreatment.[1]

During trial, three doctors who had treated Brandon testified about his injuries. Dr. Kenneth Feldman, a pediatrician and child abuse consultant, testified Brandon received "very severe head injuries" of the type that occur from events involving "dramatic acceleration or deceleration", such as when a child is not restrained in a car, the car suddenly stops, and the child's head hits the dashboard, or when an infant, whose neck cannot support his head, is violently shaken. Dr. Feldman concluded that Brandon's injuries were

---

[1]The second degree assault count read in part:

"That . . . Adam L. Bartlett . . . did intentionally assault another and thereby recklessly inflict substantial bodily harm upon Brandon Bartlett[.]"

The criminal mistreatment count read:

"That . . . Adam Leroy Bartlett . . . being a parent of a child did recklessly create an imminent and substantial risk of death or great bodily harm and cause substantial bodily harm to such person by withholding basic necessities of life, to-wit: health care[.]"

not accidental but were inflicted and that, to cause such severe brain injuries, "the shaking event ha[d] to be about as violent as anybody can manage". The symptoms from the injury would have included immediate unconsciousness, periods when Brandon stopped breathing, breathing difficulty, and "stiffening". While Dr. Feldman testified that certain treatments can prevent some brain damage if received promptly after a head injury, he could not say whether those treatments would have helped Brandon. However, he testified that the risk of permanent brain injury to Brandon was increased because he did not receive prompt care.

Dr. David Newell, the attending neurosurgeon at Harborview, testified that the force required to produce Brandon's injuries would be "equivalent to a high speed motor vehicle accident or a fall out of a window". He also testified that immediately after the injury, Brandon would have been unconscious. Dr. William Clark, the attending physician at the Pediatrics Intensive Care Unit at Children's Hospital, also testified. When asked if it would have made a difference if Brandon had been taken to the hospital for treatment immediately after the injury, Dr. Clark said yes.

On April 4, 1991, the jury found Adam Bartlett guilty of both second degree assault and second degree criminal mistreatment. On April 23, 1991, Brandon died. The State charged Adam Bartlett with second degree murder under RCW 9A.32.050(1)(b)[2] as a result of the predicate felonies of second degree assault and second degree criminal mistreatment. Bartlett waived a jury trial and stipulated to the admission of a police follow-up report, autopsy and pathology reports, and the testimony heard during the previous

---

[2]RCW 9A.32.050(1)(b) reads in part:

"A person is guilty of murder in the second degree when:

". . . .

"(b) He commits or attempts to commit any felony other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants."

trial. He also moved to dismiss the charge based on the merger doctrine and the Legislature's amendment of the second degree assault statute. The trial court denied the motion to dismiss and found Bartlett guilty of second degree felony murder based on the underlying second degree assault.[3]

At the sentencing hearing, the court imposed a 12-month standard range sentence for the second degree criminal mistreatment conviction. The court did not sentence Bartlett for the second degree assault conviction because it merged with the felony murder conviction. In a separate judgment and sentence, the court imposed an exceptional sentence of 432 months for Bartlett's felony murder conviction.[4] The court considered not only the facts of the assault against Brandon, but also the facts surrounding Adam Bartlett's 1988 conviction of second degree assault against his other son Adam, Jr., who had been 2 months old at the time of that assault. The court explained the bases for the exceptional sentence as follows:

> I can simply put into two broad categories my reasons. . . .
>
> The two categories of enhancement that I find are, first, what [the prosecutor] has summarized as a call[o]us disregard for human life, and more particularly this fragile life. I'm satisfied that although . . . there is no evidence that Mr. Bartlett intended the consequences that befell his son, . . . there is evidence based upon the prior conviction, the general similarity of the crime, the failure of the defendant to be able to conform his behavior following his conviction for that crime, of inability of him to conform his behavior to appropriate standards, and the lack of the follow through once the injury in this case was inflicted. The attitude that was evidenced with it, statements and conduct of the defendant following this incident, I think, are reflective of an enhanced culpability as [the prosecutor] has described.

---

[3]The court did not base the felony murder conviction on the criminal mistreatment conviction because it found the State had not proved beyond a reasonable doubt that withholding medical care was a proximate cause of Brandon's death.

[4]Bartlett's standard range sentence for the second degree murder was 144 to 196 months. The State requested a sentence of 576 months.

This has to encompass the knowledge of the victim's vulnerability by virtue of the prior [incident], and has to do, as I say, with a lack of the ability or the willingness to conform his behavior following the prior conviction. I am aware that this takes into account a factor that has been taken into account in his offender score, but I don't think it is fully or adequately taken into account.

That is not a disagreement with the legislature's pronouncements as to how it is to be considered, but an indication that I don't believe the legislature has intended the simple counting of the prior conviction to be the end of any inquiry. This prior conviction simply would stand alone as a prior conviction for any other violent felony. . . . I don't think this prior conviction should be considered in that light, it is not that simple.

The prior conviction was one of another child of the defendant, it was one of another very fragile child. The general nature of the conduct that is a striking out in anger was similar to this situation, and I'm satisfied to simply count it as a count 2 on the offender score does not do it justice within the scheme that the legislature has intended by the sentencing reform act. I'm satisfied that that ground constitutes grounds for an exceptional sentence.

Secondly, at least as importantly, I think there is the issue of the vulnerability. This victim was . . . a totally defenseless, fragile, vulnerable child three weeks in age. . . .

The trial court's findings of fact for the exceptional sentence read:

1. The defendant exhibited a callous disregard for the safety and well-being of his three week old son in the commission of these offenses. His culpability is enhanced because of his prior assault on his two month old son Adam Jr. who the [Defendant] struck out of anger and injured in a similar manner as Brandon. The defendant's failure to conform his behavior after the prior episode when the defendant knew of the fragility of children to such injuries is significant and not accounted for in the scoring of criminal history.

2. Brandon was particularly vulnerable to this assault by the defendant by virtue of his size and age. In addition, the victim was particularly vulnerable to the extent that he relied on the defendant to seek prompt medical attention. Instead of responding, the defendant exhibited a callous attitude in failing [to] meet the infant[]s needs. The defendant failed to take action himself, failed to report the gravity of the assault to others and exhibited a remarkable lack of interest in Brandon's well-being.

The court's conclusions of law for the exceptional sentence read:

1. The standard range (144-196) is not sufficient in this case to either protect the public or . . . punish the defendant in proportion to his culpability.

2. Substantial and compelling reasons exist to justify an exceptional sentence.

3. 432 months is an appropriate sentence viewed in light of the underlying purposes of the SRA, similar cases involving exceptional sentences and the particular facts of this case.

Bartlett appeals both judgments and sentences.

## MERGER

Bartlett contends his assault conviction merged into the homicide and, thus, was not available to be used as a predicate felony for a conviction of felony murder. He acknowledges that this argument has been rejected by our Supreme Court in *State v. Crane*, 116 Wn.2d 315, 804 P.2d 10, (citing with approval its earlier ruling on the same issue in *State v. Wanrow*, 91 Wn.2d 301, 588 P.2d 1320 (1978)), *cert. denied*, 111 S. Ct. 2867 (1991). Bartlett contends, however, that amendments to the assault statutes since *Wanrow* was decided justify reconsideration of the merger doctrine. This court recently rejected that same contention in *State v. Goodrich*, 72 Wn. App. 71, 863 P.2d 599 (1993). That opinion discussed the issues thoroughly, commencing at page 77. We are persuaded that *Goodrich* correctly answers the contentions raised by Bartlett and, accordingly, decline to apply the merger doctrine.

## CRIMINAL MISTREATMENT

Bartlett argues that the State failed to prove beyond a reasonable doubt that the delay between the time he assaulted Brandon and when he and Teri took Brandon to the hospital created an imminent and substantial risk of death or great bodily harm or caused substantial bodily harm.

■ Evidence is sufficient to uphold a criminal conviction if, after viewing the evidence in the light most favorable to

the State, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *Tacoma v. Luvene*, 118 Wn.2d 826, 849, 827 P.2d 1374 (1992). The elements of second degree criminal mistreatment are set forth in RCW 9A.42.030(1):

> A parent of a child or the person entrusted with the physical custody of a child or dependent person is guilty of criminal mistreatment in the second degree if he or she recklessly either (a) creates an imminent and substantial risk of death or great bodily harm, or (b) causes substantial bodily harm by withholding any of the basic necessities of life.

Recklessness is defined by RCW 9A.08.010(1)(c):

> A person is reckless or acts recklessly when he knows of and disregards a substantial risk that a wrongful act may occur and his disregard of such substantial risk is a gross deviation from conduct that a reasonable man would exercise in the same situation.

Here, Bartlett acted recklessly by repeatedly refusing to get medical assistance for Brandon even after the child stopped breathing. A reasonable person would have known of the risks involved when an infant stops breathing and would have taken steps to get help, such as calling 911 or a 24-hour clinic or driving to the nearest hospital. The hospital was only a 3-minute drive from the Bartletts' home.

Further, the evidence, viewed in the light most favorable to the State, indicates that Bartlett's failure to get medical help for Brandon for more than 6 hours after noticing his symptoms created "an imminent and substantial risk of death or great bodily harm" to Brandon. Dr. Feldman specifically testified that the risk of permanent brain damage was increased because Brandon did not receive prompt care. Likewise, Dr. Clark testified that, if Brandon had been taken to the hospital immediately after he was injured, "it would have made a difference". Dr. Newell also testified that "if treatment is instituted very promptly after a severe head injury, that offers the best chance to survive". That evidence is sufficient to support Bartlett's second degree criminal mistreatment conviction.

CHALLENGE TO EXCEPTIONAL SENTENCE OF 432 MONTHS

Bartlett argues that the trial court's reasons for imposing an exceptional sentence do not support that sentence as a matter of law because the trial court relied on factors inherent in second degree felony murder and the predicate felony of second degree assault, placed Bartlett in double jeopardy by relying on facts supporting the second degree criminal mistreatment conviction and facts supporting his 1988 assault conviction, which was already considered in calculating the offender score, and violated the "real facts" doctrine. Finally, Bartlett argues that the exceptional sentence of 432 months was clearly excessive.

An appellate court reviews a challenge to an exceptional sentence according to RCW 9.94A.210(4):

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

Bartlett does not contend that the record does not support the reasons the trial court used to impose the exceptional sentence. Instead, he argues that the trial court erred under the second inquiry of RCW 9.94A.210(4)(a) because the reasons for the exceptional sentence do not justify that sentence as a matter of law.

On appeal, the court reviews such a challenge by "weigh[ing] the reasons given against the purposes of the [SRA] and determin[ing] whether the former are consistent with the latter." *State v. Estrella*, 115 Wn.2d 350, 357, 798 P.2d 289 (1990) (quoting David Boerner, *Sentencing in Washington* § 9.32, at 9-71 (1985)). The reasons also must be " 'substantial and compelling', RCW 9.94A.120(2), and must take into account factors other than those which are necessarily considered in computing the presumptive range for the offense." *State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986).

Bartlett contends that the reasons on which the trial court based the exceptional sentence — callous disregard, especially culpable mental state, and victim vulnerability — are elements of the crimes of second degree felony murder and second degree criminal mistreatment and, thus, were already taken into account when the Legislature set the standard sentencing range.

■ An exceptional sentence can no longer be based on "callous disregard" unless the crime is a sexual offense. This court recently held in *State v. Bolton*, 68 Wn. App. 211, 842 P.2d 989 (1992) that "callous disregard" and "future dangerousness" are essentially indistinguishable. *But see Bolton*, at 219-24 (Agid, J., dissenting). Because *State v. Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991) held that future dangerousness could be used to support an exceptional sentence only in sexual offenses, the *Bolton* court concluded that "callous disregard" could not be used to support an exceptional sentence in nonsexual offense cases. *Bolton* involved a trial court's imposition of an exceptional sentence in a DWI case based upon the defendant's callous disregard for the effects of alcohol abuse on his ability to drive a car.

In the case now before us, the trial court's use of the term "callous disregard" appears to relate more to his especially culpable mental state than a concern for future danger to the public. The trial court spoke in terms of "callous disregard for the safety and well-being of his three week old son" and then noted the Defendant's "culpability is enhanced" because of his prior assault on his 2-month-old son Adam, Jr. Finding of fact 1.

Callous disregard for the well-being of an infant is implicit from the facts of the assault which inflicted injuries so severe as to prove fatal. To use callous disregard for the consequences of such a violent assault as a basis for an exceptional sentence would appear to violate the prohibition against using factors necessarily considered in computing the presumptive range. *State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986).

However, when we use "callous disregard" in the context in which it was used by the trial court here, *i.e.*, as evidencing an unusually high level of mental culpability, it does support an exceptional sentence. *Nordby*, at 519; *In re Farmer*, 119 Wn.2d 597, 599, 835 P.2d 219 (1992). In making this finding, the trial court relied upon Bartlett's "special knowledge" of the vulnerability of infants that he gained from being convicted for similar assaultive conduct toward his other son which caused the child catastrophic injuries.

■ Bartlett's knowledge gained from his 1988 conviction is not a prohibited basis for an exceptional sentence, even though the 1988 conviction was used in calculating his offender score, because in that calculation only the fact of conviction was used. The underlying facts of the crime had no bearing on the offender score. Here, Bartlett's mental state is at issue (*see* RCW 9A.36.021(1)(a)),[5] and the facts surrounding the 1988 conviction are relevant only to the extent they demonstrate his mental state. Such use of the facts involved in a prior conviction is different in nature from the numerical use of a prior conviction for calculating an offender score. In *In re Farmer, supra*, the exceptional sentence was based on the trial court's findings that Farmer knew or believed he had AIDS when he committed the offenses, that he knew or should have known he might infect the two minors who were his victims, and that his actions constituted deliberate, cruel, and malicious conduct. Farmer contended that the trial court punished him for additional uncharged crimes in violation of the "real facts" doctrine. The *Farmer* court disposed of this contention at page 599 as follows:

> A defendant's "especially culpable mental state" is a valid aggravating factor notwithstanding the "real facts" doctrine of RCW 9.94A.370(2). Mr. Farmer's reckless disregard for the lives of juvenile prostitutes is an "especially culpable mental state" and justifies imposition of an exceptional sentence; this

---

[5]The crime of second degree assault is defined in part:

"A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:

"(a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm." RCW 9A.36.021(1)(a).

remains true even though the conduct also might be an element of an additional uncharged crime.

(Citations omitted.)

We read *Farmer* as permitting use of evidence pointing to a defendant's especially culpable mental state even when such evidence includes facts from prior convictions used to calculate that defendant's offender score. Consequently, we hold that the trial court correctly relied on the underlying facts of Bartlett's 1988 conviction to conclude that Bartlett's especially culpable mental state justified an exceptional sentence.

### VULNERABILITY

The trial court also relied on victim vulnerability as a basis for an exceptional sentence. RCW 9.94A.390(2)(b) lists as an aggravating circumstance that "[t]he defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health".

A 3-week-old child is a classic illustration of a vulnerable victim. Bartlett does not dispute this, but contends Brandon's vulnerability was an element of the second degree criminal mistreatment conviction, and thus, may not be used to enhance his sentence. *See Nordby*, 106 Wn.2d at 518. Second degree criminal mistreatment results when, "by withholding any of the basic necessities of life", a parent or custodian of a child or dependent person recklessly "creates an imminent and substantial risk of death or great bodily harm" or "causes substantial bodily harm". RCW 9A.42.030(1)(a), (b). It is apparent from reading the statute that vulnerability of the victim is not an element of the offense. The statute can be applied when the victim is a child older than children like Brandon, who are generally considered particularly vulnerable. The evidence in this case clearly supports the victim's particular vulnerability as a basis for Bartlett's exceptional sentence.

## DOUBLE JEOPARDY

Bartlett argues that the trial court placed him in double jeopardy by basing the exceptional sentence on facts used to convict him of second degree criminal mistreatment and on facts underlying his 1988 assault conviction involving his other infant son.

■ Because a victim's particular vulnerability is not an element of second degree criminal mistreatment, the trial court's reliance on that aggravating factor could not have placed Bartlett at risk of double jeopardy. Further, the trial court relied on the fact of the 1988 conviction only once, and that was to calculate Bartlett's offender score. As previously discussed, a trial court may use facts surrounding a defendant's prior conviction to establish that defendant's especially culpable mental state for sentencing for a current conviction. That use of the facts underlying a prior conviction is distinctly different from using the prior conviction itself to calculate the offender score. Because there is no "double use" of the prior conviction, there is no double jeopardy.

## REAL FACTS DOCTRINE

Bartlett contends that the trial court violated the real facts doctrine, but it is quite apparent that the trial court did not use unproved or uncharged crimes as a basis for the exceptional sentence in this case. RCW 9.94A.370(2) was not violated, and Bartlett's argument has no merit.

## DURATION OF EXCEPTIONAL SENTENCE

■ Bartlett's final argument is that his 432-month sentence is clearly excessive. The length of a trial court's exceptional sentence will not be reversed as clearly excessive absent an abuse of discretion. *State v. Oxborrow*, 106 Wn.2d 525, 530, 723 P.2d 1123 (1986). The record must reflect the reasons for the trial court's exercise of discretion, and the length of the exceptional sentence must have "'some tenable basis in the record.'" *State v. George*, 67 Wn. App. 217, 227, 834 P.2d 664 (1992) (quoting *State v. Pryor*, 56 Wn. App. 107, 123, 782 P.2d 1076 (1989), *aff'd*, 115 Wn.2d 445, 799 P.2d 244 (1990)), *review denied*, 120 Wn.2d 1023 (1993).

In this case, the prosecutor recommended a 576-month sentence, nearly three times the high end of the standard range. The trial court imposed a 432-month sentence based on Bartlett's especially culpable mental state and Brandon's particular vulnerability as a 3-week-old infant.

In *State v. Creekmore*, 55 Wn. App. 852, 783 P.2d 1068 (1989), *review denied*, 114 Wn.2d 1020 (1990), the defendant was convicted of second degree felony murder following proof that he kicked his 3-year-old son Eli in the stomach, causing injuries which resulted in Eli's death. Creekmore contended that his 720-month sentence was "clearly excessive". That sentence was affirmed on appeal.

In *State v. Crane*, 116 Wn.2d 315, 804 P.2d 10, *cert. denied*, 111 S. Ct. 2867 (1991), the defendant was convicted of the felony murder of his 3-year-old nephew. Crane challenged his exceptional sentence of 720 months as clearly excessive. Citing *State v. Oxborrow, supra,* the court found no abuse of discretion and held that the sentence was not "clearly excessive". *Crane,* 116 Wn.2d at 335.

The trial court in the present case had before it *Creekmore* and *Crane* for guidance in establishing the duration of the sentence in this case, and so indicated in conclusion of law 3. The court rejected the prosecutor's recommendation of a 576-month sentence and imposed a sentence 12 years less than that recommended. Considering the facts surrounding the victim's death in this case and the reasons given by the trial court for imposing an exceptional sentence, we conclude that the trial court did not abuse its discretion by imposing Bartlett's 432-month sentence.

The judgment and sentence in this case are affirmed.

BAKER and AGID, JJ., concur.

Review granted at 125 Wn. 2d 1020 (1995).