[No. 12831-8-III.    Division Three.    July 11, 1995.]

THE STATE OF WASHINGTON, *Respondent,* v. DANIEL
D. DODD, *Appellant.*

*William D. McCool,* for appellant.

*James R. Reierson, Deputy Prosecuting Attorney,* for respondent.

THOMPSON, C.J. — Daniel D. Dodd appeals his conviction for manufacturing a controlled substance, marijuana. He contends that former RCW 69.50.101(o) violates his right to equal protection. That statute excepted "the preparation or compounding of a controlled substance by an individual for his or her own use . . ." from the definition

of "manufacture".[1] "[P]reparation or compounding" does not include growing marijuana. *State v. Adams*, 46 Wn. App. 874, 733 P.2d 989, *review denied*, 108 Wn.2d 1012 (1987). Hence, there is no "personal use" exception for that activity. Mr. Dodd argues the Legislature had neither a rational basis nor a substantial state interest for distinguishing between marijuana growers and those who prepare or compound other controlled substances for their own use. We affirm.

On December 22, 1991, the Walla Walla police arrested Mr. Dodd at his auto repair shop on an outstanding warrant. Mr. Dodd consented to a search of the premises. The police found and seized two 24-inch-tall marijuana plants. Mr. Dodd was subsequently charged with manufacture of a controlled substance, a violation of RCW 69.50.401(a)(1)(ii).

At a hearing on September 15, 1992, Mr. Dodd argued that as a matter of statutory construction the exception contained in former RCW 69.50.101(o) included the cultivation of small amounts of marijuana for personal use, and he requested the court to instruct the jury in his upcoming trial. His counsel represented to the court that the two plants the police seized would yield only two grams of dried marijuana. The court rejected Mr. Dodd's argument. It cited *Adams*, which held the language of the exception was plain and unambiguous and did not include the cultivation of marijuana. *Adams*, at 876.

Mr. Dodd stipulated to facts sufficient to support a finding of guilt, with the understanding he preserved his right to appeal the court's decision denying his request for a "personal use" instruction. This appeal followed.

RCW 69.50.101 defines terms used in the Uniform Controlled Substances Act. Prior to the 1993 amendments, the statute defined "manufacture" as

*the production, preparation, propagation, compounding,*

---

[1]RCW 69.50.101(o) was amended in 1993 to delete the personal use exception. Laws of 1993, ch. 187, § 1.

*conversion or processing of a controlled substance*, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, *except that this term does not include the preparation or compounding of a controlled substance by an individual for his or her own use . . ..*

(Italics ours.) Former RCW 69.50.101(o).

In *Adams*, 46 Wn. App. at 875-76, this court held that cultivation of marijuana constituted the manufacture of a controlled substance and was not included in the personal use exception. The court reasoned:

> The four activities not excepted by the statute [production, propagation, conversion, processing] contemplate a significantly higher degree of activity involving the controlled substance. Thus, they are more appropriately made felonies without regard to whether the controlled substance so "manufactured" was for personal use or for distribution.

*Adams*, 46 Wn. App. at 876.

There are numerous cases from other jurisdictions which have addressed whether the language of the personal use exception can be fairly construed to include the cultivation of marijuana. As did *Adams*, all have concluded it cannot. *See, e.g., Bedell v. State*, 260 Ark. 401, 541 S.W.2d 297 (1976), *cert. denied*, 430 U.S. 931 (1977); *People v. Pearson*, 157 Mich. App. 68, 403 N.W.2d 498 (1987); *State v. Netzer*, 579 S.W.2d 170 (Mo. Ct. App. 1979); *State v. Underwood*, 168 W. Va. 52, 281 S.E.2d 491 (1981); *State v. Maul*, 151 Wis. 2d 349, 444 N.W.2d 430 (Wis. Ct. App. 1989).

We found only one other case which addressed the equal protection issue Mr. Dodd raises in this appeal. In *State v. Boothe*, 284 N.W.2d 206 (Iowa 1979), the court upheld the statute against such a challenge. The court stated at pages 208-09: "It was a matter for proper legislative decision to evaluate [the] risks [to society] and to determine whether those who grow or propagate the substance deserve sterner

treatment than those who perform lesser acts to make it usable as a narcotic". In the same case, the Iowa Court of Appeals had reasoned:

> A substance falling within the definition of a controlled substance may sometimes require further preparation or compounding in order to be ingested or consumed for personal use even though obtained from an independent source. Under such circumstances, if it were not for the proviso under consideration, possessors for personal use could also be punished as manufacturers if they prepared or compounded the substance for that purpose. This class of persons could reasonably be classified by the legislative body as subject to punishment only as simple possessors. Conversely, other acts within the definition of manufacturing could reasonably be classified as calling for more severe punishment.

*State v. Boothe*, 285 N.W.2d 760, 764 (Iowa Ct. App.), *aff'd*, 284 N.W.2d 206 (Iowa 1979).

*Boothe* used a " 'reasonable relationship to legitimate state goals' " as the applicable test for its equal protection analysis. *Boothe*, 284 N.W.2d at 208 (quoting *Chicago Title Ins. Co. v. Huff*, 256 N.W.2d 17, 27 (Iowa 1977)). That test corresponds to the rational basis test used in Washington for classifications not founded on a suspect criterion or infringing on a fundamental right. Nevertheless, Mr. Dodd contends this court should apply an intermediate level of scrutiny in its equal protection analysis of former RCW 69.50.101(o).

In support of this argument, Mr. Dodd cites *State v. Phelan*, 100 Wn.2d 508, 671 P.2d 1212 (1983). There, the court held that the denial of credit for presentence jail time involved both a deprivation of liberty and a classification based solely upon wealth.[2] The court therefore applied an intermediate level of scrutiny, i.e., does the denial of credit for presentence time further a substantial state interest? Mr. Dodd argues the court should apply the intermediate level of scrutiny here, as well, because the

---

[2]The "classification based solely on wealth" derives from the fact poor persons are more likely than middle class or wealthy persons to serve presentence jail time. *Phelan*, at 514.

distinction made by the Legislature impacts his liberty interest. It results in a longer sentence for persons who grow marijuana rather than prepare or compound other controlled substances for personal consumption.

*State v. Danis*, 64 Wn. App. 814, 826 P.2d 1096, *review denied*, 119 Wn.2d 1015 (1992) is closer to Mr. Dodd's situation. There, the defendant challenged RCW 9.94A .400(1)(a). That statute provides that for two crimes to be considered the "same criminal conduct" for offender score purposes, they must involve the same victim, *except for cases of vehicular assault or homicide where multiple victims occupied the same vehicle.* In defendant's case, the multiple victims were not in a vehicle. They were working on a utility pole situated at the side of the road on which the defendant was traveling when he fell asleep at the wheel. The defendant therefore was not able to take advantage of the "same vehicle" exception. He argued that since his right to physical liberty was implicated, the court should subject the statute to strict scrutiny. *Danis*, 64 Wn. App. at 817.

*Danis* held at page 820 that minimal scrutiny applies to claims that statutes affecting incarceration time violate equal protection. It specifically distinguished *Phelan* on the ground it involved a classification based upon wealth, in addition to affecting the liberty interest of the defendant. *See also State v. Coria*, 120 Wn.2d 156, 171, 839 P.2d 890 (1992) (intermediate level of scrutiny required only if the statutory classification which implicates the defendant's liberty interest also affects a semisuspect class). As a further reason to apply minimal scrutiny to such statutes, the court pointed out that "[t]he Legislature has extremely broad, almost plenary authority to define crimes and prescribe punishments, subject only to constitutional limitations". *Danis*, 64 Wn. App. at 820. " '[I]f a court can reasonably conceive of a state of facts . . . which would justify the legislation, those facts will be presumed to exist and the statute will be presumed to have been passed with reference to those facts' ". *Danis*, 64 Wn. App. at 820 (quoting *State v. Brayman*, 110 Wn.2d 183, 193, 751 P.2d 294 (1988)).

Despite Mr. Dodd's arguments, there exists a rational basis for the Legislature's decision to treat the cultivation of marijuana for personal use as the manufacture of a controlled substance. Unlike the preparation of cocaine or some other controlled substances, the cultivation of marijuana is an ongoing process. As such, it cannot always be in the user's personal possession. If grown outside, there exists the possibility that someone else may harvest it. If grown indoors, members of the offender's family, perhaps children, are exposed to it. Moreover, unlike heroin and cocaine, which typically reach the user *after* harvest, marijuana plants provide the user seeds for future production.

■ The rational basis test applies to Mr. Dodd's equal protection claim. The statutory classification here satisfies that test. The Legislature reasonably viewed the manufacture of a controlled substance, even in small amounts, as more culpable than preparing or compounding such a substance for personal use.

Affirmed.

MUNSON and SCHULTHEIS, JJ., concur.