[No. 13973–5–III.    Division Three.    May 28, 1996.]

THE STATE OF WASHINGTON, *Appellant*, v. SELENA S. DUNN A/K/A O'BRIEN, *Respondent*.

*John D. Knodell III, Prosecuting Attorney*, for appellant.

*Kenneth L. Knox; Cathy J. Zavis; Ralph Hurvitz, Patricia S. Novotny*; and *Andrew L. Subin* and *Ende, Subin & Philip*, for respondent.

*Nalani M. Askov* on behalf of Washington State Coalition on Women's Substance Abuse Issues, amicus curiae.

*Lynn Paltrow* on behalf of The Center for Reproductive Law & Policy, amicus curiae.

*Nadine Taub*, amicus curiae.

*Carol E. Tracy* and *Susan Frietsche* on behalf of Women's Law Project, amicus curiae.

SCHULTHEIS, J. — Both Selena Dunn and her newborn child tested positive for cocaine. The State charged Ms. Dunn with second degree criminal mistreatment of her viable unborn child, citing RCW 9A.42.030(1)(a). After a

*Knapstad*[1] hearing, the trial court dismissed the charge and the State appeals, contending (1) the trial court did not follow the proper procedure in formulating the *Knapstad* order, and (2) the undisputed facts prove Ms. Dunn committed second degree criminal mistreatment. We affirm.

For the purposes of the *Knapstad* hearing and this review, the following facts are undisputed. On October 13, 1992, Ms. Dunn gave birth to a four–pound, nine–ounce female child. Both the mother and child tested positive for cocaine. On two previous trips to the doctor, one in March 1992 and the other in September 1992, the mother had tested positive for cocaine. The mother also admitted using heroin during her pregnancy.

During a prenatal consultation some months before the birth, Ms. Dunn's doctor advised her that continued cocaine use could damage the child's life. She was scheduled to begin drug treatment in October 1992, but never attended the program. At birth, the child was diagnosed with fetal intrauterine growth retardation and placenta abruptio.[2] Ms. Dunn's doctor attributed the premature birth, growth retardation and placenta abruptio to the cocaine use and stated that all these conditions were life threatening. By the time of the hearing, it had been discovered that the child was blind, and for the purposes of the hearing the court accepted the doctor's opinion that the blindness was related to the mother's ingestion of cocaine.

Soon after the birth, Child Protection Services (CPS) notified the Grant County Sheriff's Department of the child's exposure to cocaine. The child was placed with CPS and Ms. Dunn was charged on January 19, 1993, with

---

[1]*State v. Knapstad,* 107 Wn.2d 346, 729 P.2d 48 (1986) (the trial court has inherent authority to dismiss charges prior to trial when the State fails to present evidence supporting a prima facie case of guilt).

[2]Placenta abruptio is defined as premature detachment of the placenta. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 5 (25th ed. 1974).

criminal mistreatment in the second degree, RCW 9A.42.030(1)(a).[3] In pertinent part, the information alleged that Ms. Dunn "did recklessly create an imminent and substantial risk of death or great bodily harm by taking cocaine during pregnancy after being warned by the doctor that it was harmful to the unborn child." Ms. Dunn moved to dismiss on the grounds that the undisputed facts did not establish a prima facie case of guilt. *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986). The trial court granted the motion and the State now appeals.

■ The State first challenges the order of dismissal on technical grounds, contending the trial court failed to comply with the procedural requirements of a *Knapstad* hearing. In *Knapstad*, 107 Wn.2d at 352, the Supreme Court noted that a trial court has inherent power to dismiss a criminal prosecution for insufficiency of the charge. In recognition of that power, the *Knapstad* court held that a trial court may entertain a pretrial motion to dismiss if there are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt. *Knapstad*, 107 Wn.2d at 356; *State v. Johnson*, 66 Wn. App. 297, 298, 831 P.2d 1137 (1992); *State v. Brown*, 64 Wn. App. 606, 610 n.4, 825 P.2d 350, *review denied*, 119 Wn.2d 1009 (1992). The court's dismissal of the information is proper if no rational trier of fact could have found beyond reasonable doubt the essential elements of the crime. *Knapstad*, 107 Wn.2d at 349; *Johnson*, 66 Wn. App. at 299.

The procedural requirements of a *Knapstad* hearing are not as stringent as urged by the State. Basically, the defendant "should" initiate the motion by a sworn affidavit that "must necessarily contain with specificity all facts and law relied upon in justification of the dismissal."

---

[3]RCW 9A.42.030(1) provides that:

"A parent of a child or the person entrusted with the physical custody of a child or dependent person is guilty of criminal mistreatment in the second degree if he or she recklessly either (a) creates an imminent and substantial risk of death or great bodily harm, or (b) causes substantial bodily harm by withholding any of the basic necessities of life."

*Knapstad*, 107 Wn.2d at 356. If the State specifically denies the material facts alleged in the affidavit, the motion is defeated. *Id.* Otherwise, the court looks to the undisputed facts and ascertains whether, as a matter of law, they establish a prima facie case of guilt. Then, "[i]f the motion is granted[,] the court must enter a written order setting forth the affidavits and other materials it has considered and its conclusion regarding the insufficiency of the evidence." *Knapstad*, 107 Wn.2d at 357.

In his affidavit in support of the *Knapstad* motion, Ms. Dunn's counsel asserted "that the attached police report includes no material disputed fact and that the undisputed facts do not establish a prima facie case of guilt . . . ." The police report was not attached and apparently was never before the court. On the other hand, the prosecutor told the court at the hearing that the police report was not necessary because the probable cause statement that had already been submitted essentially contained the same information.[4] None of the material facts were disputed, nor are they disputed on appeal. In its written order, the court noted that it had considered "the files and records herein and the argument of counsel . . . ." While the affidavit in support of the motion does not "contain with specificity" all the material facts, and the order does not set out by name each affidavit and document it considered, there is no uncertainty here concerning the facts or the records relied on by the court in making its decision. Strict compliance with the procedure set out in *Knapstad* is not required, so long as it is clear the material undisputed facts were before the court. *See Knapstad*, 107 Wn.2d at 357 (noting the trial court there "essentially complied" with the procedure).

The State next contends the undisputed facts support beyond reasonable doubt the essential elements of second

---

[4]The prosecutor's actual words were as follows:

"I am prepared to submit [the police reports] to the court if you feel it's necessary. I was going to basically rely upon the probable cause statement which we have submitted to the court. I don't think the police reports add a lot to that."

degree criminal mistreatment. Specifically, it argues the facts show that Ms. Dunn recklessly disregarded the warnings of her doctor and created an imminent and substantial risk of death or great bodily harm to her unborn child.

Second degree criminal mistreatment under RCW 9A.42.030(1)(a) includes these elements: (1) the defendant must be a parent or guardian, (2) the victim must be a child or dependent, (3) the defendant must act recklessly, (4) the defendant's actions must create an imminent and substantial risk of death or great bodily harm, and (5) the risk of death or harm must be caused by withholding a basic necessity of life. *State v. Bartlett*, 74 Wn. App. 580, 593, 875 P.2d 651 (1994), *aff'd*, 128 Wn.2d 323, 907 P.2d 1196 (1995); *State v. Creekmore*, 55 Wn. App. 852, 859, 783 P.2d 1068 (1989), *review denied*, 114 Wn.2d 1020 (1990). The basic necessities of life are defined as "food, shelter, clothing, and health care." RCW 9A.42.010(1). To defeat the *Knapstad* order of dismissal on appeal, the State must show that a rational trier of fact could have found beyond reasonable doubt each of these essential elements of the crime. *Knapstad*, 107 Wn.2d at 349; *Johnson*, 66 Wn. App. at 299. We find that the State failed to establish that Ms. Dunn's unborn child was a "child" for the purposes of the criminal mistreatment statute. Further, the State failed to allege that Ms. Dunn withheld a basic necessity of life.

We first examine whether Ms. Dunn and her unborn child came within the statute's definition of the perpetrator and the victim. The State contends the Legislature intended to include a pregnant woman within the definition of "parent," and a viable unborn child, or fetus, within the definition of "child" in RCW 9A.42.030. Noting that a fetus is a "minor child" for the purposes of the wrongful death statute,[5] RCW 4.24.010, the State argues that the Legislature likewise considered the fetus a child in the criminal statutes.

When we interpret a statute, our purpose is to

---

[5]*Moen v. Hanson*, 85 Wn.2d 597, 599–600, 537 P.2d 266 (1975); *Cavazos v. Franklin*, 73 Wn. App. 116, 120–21, 867 P.2d 674 (1994).

give force to the language of the statute and the intent of the Legislature. *State v. Wilson*, 125 Wn.2d 212, 216, 883 P.2d 320 (1994); *State v. Bernard*, 78 Wn. App. 764, 766–67, 899 P.2d 21 (1995). Unlike the wrongful death statute, which is remedial in nature and interpreted liberally as a result, a criminal statute must be given a literal and strict interpretation. *Wilson*, 125 Wn.2d at 216–17; *Gray v. Goodson*, 61 Wn.2d 319, 324, 378 P.2d 413 (1963). If a criminal statute is ambiguous (susceptible to more than one interpretation), the rule of lenity requires us to adopt an interpretation most favorable to the criminal defendant. *State v. Roberts*, 117 Wn.2d 576, 586, 817 P.2d 855 (1991); *Bernard*, 78 Wn. App. at 768. We find no ambiguity here.

RCW 9A.42.010(3) defines "child" as "a person under eighteen years of age."[6] "Person" is defined elsewhere in the criminal statutes as "any natural person." RCW 9A.04.110(17). No Washington criminal case has ever included "unborn child" or fetus in its definition of person. When the Legislature intends to include the fetus in a class of criminal victims, it specifically writes that language into the statute. *See* RCW 9A.32.060(1)(b) (first degree manslaughter: intentional and unlawful killing of "an unborn quick child by inflicting any injury upon the mother of such child"); RCW 9A.36.021(1)(b) (second degree assault: intentionally and unlawfully causing substantial harm to "an unborn quick child by intentionally and unlawfully inflicting any injury upon the mother of such child"). Considering the Legislature's broad, almost plenary, authority to define crimes,[7] the fact that it did not specifically define "child" in RCW 9A.42.010(3) to include a fetus indicates it did not intend to depart from the typi-

---

[6]RCW 9A.42.010(5) provides that:

" 'Parent' has its ordinary meaning and also includes a guardian . . . ."

[7]*State v. Dodd*, 78 Wn. App. 533, 537, 897 P.2d 428 (1995) (citing *State v. Danis*, 64 Wn. App. 814, 820, 826 P.2d 1096, *review denied*, 119 Wn.2d 1015 (1992)).

cal definition of a child as a person from the time of birth to age 18.[8]

██ Another important deficiency in the State's charge is its total disregard for the element of withholding. The importance of this element is apparent in the 1986 *Final Legislative Report*, 49th Wash. State Legislature, at 37, which summarizes the crime of criminal mistreatment as follows:

> Parents and persons to whom the physical custody of children are entrusted may be charged for failure to provide food, shelter, clothing, or health care . . . .
>
> Reckless failure to provide food, shelter, clothing, or health care which results in serious permanent disfigurement or a permanent loss or impairment of body parts or organs, is a class B felony.

It is well established that an information must contain the necessary facts to support each element of the crime charged. *State v. Simon*, 120 Wn.2d 196, 198, 840 P.2d 172 (1992); *State v. Sloan*, 79 Wn. App. 553, 556, 903 P.2d 522 (1995). Here, neither the information nor the undisputed facts allege that Ms. Dunn withheld any of the basic necessities of life.

In sum, we find that the State failed to name a victim that came within the protection of the criminal mistreatment statute and failed to allege or prove an essential element of the crime. Accordingly, the charge was properly dismissed. *Knapstad*, 107 Wn.2d at 349; *Sloan*, 79 Wn. App. at 556.

Affirmed.

---

[8]*See Reinesto v. Superior Court*, 182 Ariz. 190, 192, 894 P.2d 733, 735 (Ct. App. 1995) (if the legislature had intended to refer to an unborn child or fetus in the Arizona child abuse statute, ARIZ. REV. STAT. ANN. § 13–3623, it would have done so).

SWEENEY, C.J., and MUNSON, J., concur.

Review denied at 130 Wn.2d 1018 (1996).