[No. 30133-4-II.   Division Two.   July 7, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. PATRICIA LORRAINE McGARY, *Appellant*.

*Lisa E. Tabbut*, for appellant.

*Susan I. Baur, Prosecuting Attorney,* and *Michelle L. Shaffer, Deputy,* for respondent.

VAN DEREN, J. — Patricia Lorraine McGary appeals her convictions of two counts of second degree criminal mistreatment based on her operation of a motor vehicle while intoxicated with her two children in the vehicle. She argues (1) under RCW 9A.42.030(1)(a), the State was required to prove that she withheld a basic necessity of life from her children; (2) the evidence was insufficient to prove this element; and (3) the charging information was defective because it failed to allege this element. We agree that the State was required to prove that McGary created a risk of death or great bodily harm by withholding a basic necessity of life. We further agree that the charging information was defective and do not reach sufficiency of the evidence because the offense was not validly charged. Accordingly, we reverse and dismiss the criminal mistreatment charges without prejudice.

## FACTS[1]

On November 2, 2002, McGary and her two children spent the day at a friend's house. During the day, McGary drank several glasses of wine. That evening, McGary left her friend's house with her two young sons.

At approximately 10:00 P.M., a police officer discovered McGary's car in a park approximately seven miles from her

---

[1] Because McGary does not assign error to any of the trial court's findings of fact, we consider them verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

friend's house. McGary was asleep in the driver's seat and her two children were asleep in their car seats. When the officer found them, the temperature was below freezing, the car's engine was running, the car doors were unlocked, and the driver's window was open about six inches.

After several attempts, the officer woke McGary. After attempting to start her already running car, McGary eventually opened her window and spoke to the officer. When she did, the officer smelled the odor of alcohol and observed that McGary's eyes were dilated, watery, and unfocused.

McGary told the officer that she had been drinking and that she had driven from her friend's house to the park. She also told the officer that upon reaching the park, she decided not to drive any farther because she knew she was too intoxicated to drive on the Interstate. The most obvious route from her friend's house to the park required her to drive on several busy streets.

The officer administered a portable breath test and transported McGary to the hospital. Based on his observations, training, and experience, the officer believed that McGary was extremely intoxicated.

The State charged McGary with two counts of second degree criminal mistreatment under RCW 9A.42.030(1)(a), one for each child, and with driving under the influence. Counts I and II of the charging information stated:

## COUNT I
### CRIMINAL MISTREATMENT IN THE SECOND DEGREE

The defendant, in the County of Cowlitz, State of Washington, on or about November 2, 2002, being a parent of Cody Spears or the person entrusted with physical custody of Cody Spears, did recklessly create an imminent and substantial risk of death or great bodily harm to Cody Spears, a child; contrary to RCW 9A.42.030(1)(a) and against the peace and dignity of the State of Washington.

### COUNT II
### CRIMINAL MISTREATMENT IN THE SECOND DEGREE

The defendant, in the County of Cowlitz, State of Washington, on or about November 2, 2002, being a parent of Ryan Spears or the person entrusted with physical custody of Ryan Spears, did recklessly create an imminent and substantial risk of death or great bodily harm to Ryan Spears, a child; contrary to RCW 9A.42.030(1)(a) and against the peace and dignity of the State of Washington.

Clerk's Papers (CP) at 1.

McGary waived her right to a jury and the case proceeded to a bench trial. After the State rested but prior to the verdict, she challenged the sufficiency of the charging information. The trial court found the charging information sufficient and found her guilty of all three charges.[2] The trial court specifically found that she had recklessly "created an imminent and substantial risk of death or great bodily harm" to each child "by driving within the State of Washington approximately 7 miles with [the children] in the car while [she] was in a state of extreme intoxication." CP at 54.

McGary appeals, arguing that RCW 9A.42.030(1)(a) required the State to allege and prove that she created an imminent and substantial risk of death or great bodily harm *by withholding any of the basic necessities of life*.

ANALYSIS

### I. Statutory Construction

The primary issue in this appeal is whether withholding a basic necessity of life is an element of RCW 9A.42.030(1)(a). RCW 9A.42.030(1) provides:

A parent of a child, the person entrusted with the physical custody of a child or dependent person, or a person employed to

---

[2] McGary does not appeal her DUI (driving under the influence) conviction.

provide to the child or dependent person the basic necessities of life is guilty of criminal mistreatment in the second degree if he or she recklessly, as defined in RCW 9A.08.010, *either (a) creates an imminent and substantial risk of death or great bodily harm, or (b) causes substantial bodily harm by withholding any of the basic necessities of life.*

(Emphasis added.) Resolving this issue depends on whether the phrase "by withholding any of the basic necessities of life" applies to both subsections (a) and (b) or whether it applies only to subsection (b).

Our purpose in construing a statute is to ascertain and give effect to the legislature's intent and purpose. *State v. Wilson*, 125 Wn.2d 212, 216, 883 P.2d 320 (1994). When determining legislative intent, we look first to the statutory language. *State v. Wentz*, 149 Wn.2d 342, 346, 68 P.3d 282 (2003). Plain language does not require construction. *Wilson*, 125 Wn.2d at 217.

We look to other sources of legislative intent only when a statute is ambiguous, *State v. Rhodes*, 58 Wn. App. 913, 915-16, 795 P.2d 724 (1990), i.e., if it is susceptible to two or more reasonable interpretations. *State v. Sunich*, 76 Wn. App. 202, 206, 884 P.2d 1 (1994); *State v. Garrison*, 46 Wn. App. 52, 54, 728 P.2d 1102 (1986).

The State argues that there is only one way to interpret RCW 9A.42.030(1) because of its disjunctive language and its punctuation. It asserts that the statute is unambiguous because the "by withholding" requirement is located only in subsection (b) and the subsections are separated by an "or" rather than an "and." Br. of Resp't at 3. We disagree.

We acknowledge that the two subsections are stated in the disjunctive. Under the last antecedent rule and a corollary to that rule,[3] it appears that the "by withholding" requirement applies only to subsection (b),

---

[3] Under the last antecedent rule, we construe relative and qualifying words and phrases, both grammatically and legally, to refer to the last antecedent if a contrary intention does not appear in the statute. *Wentz*, 149 Wn.2d at 351 (quoting *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 781, 903 P.2d 443 (1995)). A corollary to that rule is that "the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to all antecedents

but the last antecedent rule is " 'not inflexible or uniformly binding.' " *In re Pers. Restraint of Smith*, 139 Wn.2d 199, 205, 986 P.2d 131 (1999) (quoting *State v. McGee*, 122 Wn.2d 783, 788-89, 864 P.2d 912 (1993)). Rather, the grammar rules are interpretive tools intended to assist the court in discovering the legislature's intent or meaning. *Smith*, 139 Wn.2d at 205 (quoting *McGee*, 122 Wn.2d at 788-89).

Thus, in addition to examining the specific statutory language, we must also consider whether the grammatically correct construction of the statute makes sense within the statutory scheme as a whole. *See In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 782, 903 P.2d 443 (1995) (examined both the legislative history and the corollary to the last antecedent rule in determining the meaning of the statute). Although the last antecedent rule and its corollary suggest that the "by withholding" phrase applies only to subsection (b), the codified statement of legislative intent and the statutes defining the other degrees of criminal mistreatment strongly suggest that the offense of criminal mistreatment must involve a withholding of basic necessities.

RCW 9A.42.005, the codified statement of legislative intent for chapter 9A.42 RCW, provides in part:

> The legislature finds that there is a significant need to protect children and dependent persons, including frail elder and vulnerable adults, from abuse and neglect by their parents, by persons entrusted with their physical custody, or by persons employed to provide them with the basic necessities of life. The legislature further finds that such abuse and neglect often takes the forms of either withholding from them the basic necessities of life, including food, water, shelter, clothing, and health care, or abandoning them, or both. Therefore, it is the intent of the legislature that criminal penalties be imposed on those guilty of such abuse or neglect.

---

instead of only the immediately preceding one." *Sehome Park Care Ctr.*, 127 Wn.2d at 781-82.

This suggests that the legislature intended to direct the second degree criminal mistreatment statute at those who recklessly endangered their dependents by withholding basic necessities.

Additionally, the first, third, and fourth degree criminal mistreatment statutes clearly require that the State prove withholding of any of the basic necessities of life. RCW 9A.42.020(1);[4] RCW 9A.42.035(1);[5] RCW 9A.42.037(1).[6] This also strongly suggests that the legislature intended to require the State to prove that the defendant withheld a basic necessity of life to establish any degree of criminal mistreatment.

---

[4] RCW 9A.42.020(1), the first degree criminal mistreatment statute, provides:

A parent of a child, the person entrusted with the physical custody of a child or dependent person, or a person employed to provide to the child or dependent person the basic necessities of life is guilty of criminal mistreatment in the first degree if he or she recklessly, as defined in RCW 9A.08.010, causes great bodily harm to a child or dependent person *by withholding any of the basic necessities of life.*

(Emphasis added.)

[5] RCW 9A.42.035(1), the third degree criminal mistreatment statute, provides:

A person is guilty of the crime of criminal mistreatment in the third degree if the person is the parent of a child, is a person entrusted with the physical custody of a child or other dependent person, or is a person employed to provide to the child or dependent person the basic necessities of life, and either:

(a) With criminal negligence, creates an imminent and substantial risk of substantial bodily harm to a child or dependent person *by withholding any of the basic necessities of life*; or

(b) With criminal negligence, causes substantial bodily harm to a child or dependent person *by withholding any of the basic necessities of life.*

(Emphasis added.)

[6] RCW 9A.42.037(1), the fourth degree criminal mistreatment statute, provides:

A person is guilty of the crime of criminal mistreatment in the fourth degree if the person is the parent of a child, is a person entrusted with the physical custody of a child or other dependent person, or is a person employed to provide to the child or dependent person the basic necessities of life, and either:

(a) With criminal negligence, creates an imminent and substantial risk of bodily injury to a child or dependent person *by withholding any of the basic necessities of life*; or

(b) With criminal negligence, causes bodily injury or extreme emotional distress manifested by more than transient physical symptoms to a child or dependent person *by withholding the basic necessities of life.*

(Emphasis added.)

Furthermore, as Division Three recognized in *State v. Dunn*, 82 Wn. App. 122, 916 P.2d 952 (1996), the legislative history of RCW 9A.42.030 also suggests that the legislature intended the criminal mistreatment statutes to address risk of harm created by withholding the basic necessities of life. We agree with the State that the *Dunn* court's reliance on two Division One cases, *State v. Bartlett*, 74 Wn. App. 580, 875 P.2d 651 (1994), and *State v. Creekmore*, 55 Wn. App. 852, 783 P.2d 1068 (1989), is questionable because neither case specifically interprets RCW 9A.42.030(1)(a). But we find the *Dunn* court's reliance on the legislative history of the criminal mistreatment statutes persuasive.

As the *Dunn* court noted, *see* 82 Wn. App. at 129, the Final Legislative Report for the bill enacting the original criminal mistreatment statutes provides the following summary of the bill:

> The crime of criminal mistreatment is created. Parents and persons to whom the physical custody of children are entrusted may be charged for failure to provide food, shelter, clothing, or health care. Persons entrusted with the care of physically or mentally disabled dependents may also be charged. In addition, persons entrusted with the care of dependents of extreme advanced age may be charged for failure to provide care.
>
> Reckless failure to provide food, shelter, clothing, or health care which results in serious permanent disfigurement or a permanent loss or impairment of body parts or organs, is a class B felony. Reckless failure to provide food, etc., which creates a substantial risk of death or permanent injury, or which causes temporary but substantial disfigurement or impairment, is a class C felony.

1986 FINAL LEGISLATIVE REPORT, 49th Wash. Leg., Reg. Sess., SHB 803, at 37. This summary suggests that the legislature considered the failure to provide the necessities of life as critical to the charge of criminal mistreatment offense, regardless of the degree of the offense.

The Final Legislative Report for the later amendments to the criminal mistreatment statutes further illustrates that

the legislature intended the "by withholding" requirement to apply to all criminal mistreatment crimes:

> The existing crimes of criminal mistreatment in the first and second degree are defined to also apply to a person employed to provide a child or dependent person the basic necessities of life *where a risk of bodily harm or actual harm is caused by the reckless withholding of those necessities.*

1997 FINAL LEGISLATIVE REPORT, 55th Wash. Leg., Reg. Sess., E2SHB 1850, at 135 (emphasis added).

The statutory scheme, the codified statement of legislative intent, and the legislative history all indicate that the legislature enacted the criminal mistreatment laws to prevent the risk of injury to dependents due to a parent or other responsible party's failure to provide any of the basic necessities of life. Accordingly, we hold that in order to prove second degree criminal mistreatment under RCW 9A.42.030(1)(a), the State had to prove that McGary created the risk of harm by withholding any of the basic necessities of life.

## II. Defective Information

McGary further argues that the charging information for the criminal mistreatment charges was defective because it failed to allege that she withheld any basic necessities. In light of our holding in the previous section, we agree.

An information must state all the essential elements of a crime so that the accused may understand the charges and prepare a defense. *State v. Johnson*, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992); *State v. Kjorsvik*, 117 Wn.2d 93, 101, 812 P.2d 86 (1991). Here, because McGary did not challenge the charging information until after the State rested, we construe the charging document liberally. *State v. Phillips*, 98 Wn. App. 936, 942-43, 991 P.2d 1195 (2000) (court must construe charging document liberally if defendant fails to challenge it before the State has lost the opportunity to amend the information).

Consequently, we apply a two-prong analysis: (1) do necessary facts appear in any form, or by fair construction can they be found in the document; and, if so, (2) can the defendant show that the inartful language actually prejudiced her? *State v. McCarty*, 140 Wn.2d 420, 425, 998 P.2d 296 (2000) (citing *Kjorsvik*, 117 Wn.2d at 105-06 ). "If the necessary elements are not found or fairly implied, however, we presume prejudice and reverse without reaching the question of prejudice." *McCarty*, 140 Wn.2d at 425 (citing *Kjorsvik*, 117 Wn.2d at 105-06; *City of Auburn v. Brooke*, 119 Wn.2d 623, 636, 836 P.2d 212 (1992)).

■ The information here does not allege the "by withholding" element in either second degree criminal mistreatment charge. Accordingly, the information was defective and there is presumed prejudice to McGary. Therefore, we reverse the second degree criminal mistreatment convictions. *State v. Rodgers*, 146 Wn.2d 55, 59-60, 43 P.3d 1 (2002); *State v. Vangerpen*, 125 Wn.2d 782, 791, 793, 888 P.2d 1177 (1995); *State v. Tresenriter*, 101 Wn. App. 486, 492-93, 4 P.3d 145, 14 P.3d 788 (2000). Because the charging information was invalid, the State never validly charged McGary with second degree criminal mistreatment; thus, we do not reach McGary's sufficiency of the evidence argument. *Rodgers*, 146 Wn.2d at 59-60 ("[A] court may not consider a challenge to the sufficiency of the evidence supporting a conviction for an offense that was not validly charged.").

Accordingly, we reverse and dismiss the criminal mistreatment convictions without prejudice.

MORGAN, A.C.J., and BRIDGEWATER, J., concur.