STATE of Minnesota, Respondent,

v.

Paul MAGNAN, Appellant.

No. 82–215.

Supreme Court of Minnesota.

Jan. 7, 1983.

---

C. Paul Jones, Public Defender, and Lawrence Hammerling, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Tom Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

AMDAHL, Chief Justice.

This is an appeal out of Ramsey County from a judgment of conviction of aggravated robbery based on a straight guilty plea. The appeal raises only a sentencing issue, whether the trial court erred in imposing a sentence of 120 months consecutive to a previously imposed sentence of 21 months when the presumptive sentence established by the Sentencing Guidelines for this offense (severity level VII) by one with defendant's criminal history score (six) is 97 (90–104) months concurrent.

On June 15, 1981, defendant and an accomplice, both armed with handguns, entered the Capitol Drug Store at County Road E and White Bear Avenue and ordered a number of employees and a delivery person to lie down on the floor. One of the two, apparently defendant's accomplice, pointed his gun at the head of the delivery person and threatened to blow his head off if he did not cooperate. The two men ordered one of the employees to put all the store's Class A drugs, along with Valium and Dilaudid, in a large grocery bag.

Police received a call concerning a robbery in progress in the store, and a chase ensued after the police located a car which fit the description of the getaway car obtained from someone at the scene. During the chase, which involved a number of police cars, the occupants of the getaway car threw items out on the street, including the bag of drugs and the two loaded guns used in the robbery, a .38-caliber revolver and a .32-caliber automatic with its hammer cocked. Two boys, age 9 and 11, picked up the revolver and gave it to a police officer. A man picked up the other gun and was apparently going to retain possession of it, at least temporarily, until police stopped him. The police recovered the drugs themselves.

Meanwhile, the robbers stopped their getaway car, came out with their hands up, and submitted to arrest at Rice and LaFond. Defendant and Talley Edward Benavidez were identified as the two gunmen,

and William Christopher Benjamin was identified as the driver. Defendant and the others were subsequently charged with aggravated robbery.

Benjamin pleaded guilty and was sentenced by the trial court to 81 months in prison, which is the presumptive sentence for aggravated robbery by a person with a criminal history score of five. Benavidez pleaded guilty and was sentenced by the same judge to 54 months, which is the minimum presumptive sentence for aggravated robbery under Minn.Stat. § 609.11, subd. 5 (Supp.1981) and Minnesota Sentencing Guidelines and Commentary, II.E. (1982) when the robbery is committed with a firearm.

Defendant first pleaded guilty to an identical charge in Bemidji pursuant to a plea agreement that the trial court there would sentence him after defendant pleaded guilty and was sentenced in Ramsey County and then would impose the presumptive sentence and make it concurrent with the Ramsey County sentence. The Bemidji offense apparently occurred before the Ramsey County offense.

Thereafter, defendant entered a straight guilty plea to the Ramsey County charge, admitting that he was one of the two gunmen and that he had told several people in the store to lie down but denying that he had made any verbal threats to any of the people in the store. He refused to testify about the role in the crime of his accomplices, who had not yet pleaded guilty at the time and who he feared might harm him in prison if he testified against them.

A presentence investigation was then conducted and a report prepared. In talking with the court services officer who prepared the report, defendant stated that he had just been released from the V.A. Hospital, where he had been hospitalized because of his drug addiction. Defendant stated that Benjamin and Benavidez were friends of his in the drug subculture and that they discussed the robbery the night before the offense. He stated that the .32-caliber automatic was his and the .38-caliber revolver was Benavidez's gun. He stated that he had been to the methadone maintenance program to receive his daily dose and was "sick" at the time he committed the offense. He said that they committed the robbery in order to get drugs, not money, and that the drugs were for personal use. He admitted throwing his gun out the window during the chase.

Defendant, who is now 29, had a criminal history score of six at the time of sentencing. That score is based on one custody status point and five felony points. The felony points are for the following convictions: concealing stolen property, February 1975; possession of heroin, October 1975; uttering a forged instrument, February 1976; unlawful attempt to procure a controlled substance, April 1978; possession of a controlled substance, August 1981. Defendant was on probation in connection with the 1981 conviction when he committed the instant offense.

The presumptive sentence for the offense (severity level VII) by one with defendant's criminal history score (six) is 97 (90–104) months in prison. Since the facts do not place this case within any of the exceptions to the concurrent sentencing rule—*see* Minnesota Sentencing Guidelines and Commentary, II.F. (1982)—concurrent sentencing is appropriate in this case absent aggravating circumstances justifying use of consecutive sentencing.

In imposing a 120-month consecutive sentence, the same judge who sentenced Benavidez and Benjamin focused on two different sets of facts as justifying the departure, the facts concerning defendant's criminal history and his dangerousness to the public, and the facts concerning the manner in which defendant and his accomplices committed the robbery.

Generally the sentencing court cannot rely on a defendant's criminal history as a ground for departure. The Sentencing Guidelines take one's history into account in determining whether or not one has a criminal history score and, if so, what the score should be. Here defendant's criminal history was already taken into

account in determining his criminal history score and there is no justification for concluding that a qualitative analysis of the history justifies using it as a ground for departure. *State v. Erickson,* 313 N.W.2d 16 (Minn.1981); *State v. Barnes,* 313 N.W.2d 1 (Minn.1981). Similarly, the court's belief that defendant is so dangerous that an extended period of incarceration is warranted is not ground for the departure. *State v. Hagen,* 317 N.W.2d 701 (Minn.1982).

 Key cases bearing on whether the manner in which the robbery was committed would justify the departure include *State v. McClay,* 310 N.W.2d 683 (Minn. 1981), and *State v. Schantzen,* 308 N.W.2d 484 (Minn.1981). In *McClay* we upheld a durational departure in an aggravated robbery case because we concluded that the conduct underlying the offense was particularly serious and represented a greater than normal danger to the safety of other people (defendants put more people in fear, kidnapped one person, and also assaulted several others during their escape). In *Schantzen* we held that the gratuitous spraying with mace of the handcuffed employees during a pharmacy robbery constituted particular cruelty justifying a durational departure, but held that the fact that dangerous drugs were taken in the robbery was not by itself an aggravating factor.

In this case there were no gratuitous assaults analogous to those committed in *Schantzen.* And the fact that dangerous drugs were taken is not by itself an aggravating factor, although it arguably is a fact meriting consideration along with the other facts. It is true that defendants put the police through a potentially dangerous highspeed chase before they surrendered and that defendant and one of his accomplices threw out their guns during the chase, thereby creating potential danger to the people who found the guns. However, the trial court did not believe these same facts constituted aggravating circumstances justifying the aggravation of the sentences of defendant's equally guilty accomplices. Taking into account all the facts, we conclude that there were insufficient grounds justifying the departure in this case.

Accordingly, we reduce defendant's sentence to 104 months, which is the maximum permitted for the offense by a person with defendant's criminal history score without departing, and we order that the sentence run concurrently with, rather than consecutive to, defendant's previously imposed sentence.

Affirmed as modified.