[No. 62055-5.  En Banc.  December 14, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. ADAM L. BARTLETT, *Petitioner*.

*Suzanne Lee Elliott* of *Washington Appellate Project*; and *Nielsen & Acosta,* by *Eric J. Nielsen,* for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Donna L. Wise, Mark R. Larson*, and *Regina Cahan, Deputies*, for respondent.

SMITH, J. — Petitioner Adam L. Bartlett seeks review of a decision of the Court of Appeals, Division One, which upheld an aggravated exceptional sentence imposed by the King County Superior Court upon his conviction for murder in the second degree. We granted review "only on the issue of whether the trial court violated the Sentencing Reform Act in treating the facts underlying petitioner's 1988 assault conviction as a reason for imposing an exceptional sentence for the present murder conviction." We answer the question in the negative and affirm.

#### QUESTION PRESENTED

The question presented in this case is whether, consistent with the purpose of the Sentencing Reform Act of 1981, RCW 9.94A, facts underlying a defendant's prior assault conviction may be relied upon to show "enhanced culpability" as a basis for imposing a sentence above the standard range for the defendant's current felony murder conviction.

#### STATEMENT OF FACTS

Petitioner Adam L. Bartlett was at home with his three-week-old son, Brandon, on the night of November 6, 1990, while his wife, Ms. Teri Bartlett, was working the late shift at her job in a convenience store. At 1:00 A.M., Petitioner telephoned his wife and told her Brandon was breathing erratically. She asked if she should come home, but he told her not to because they needed the money. He gave Brandon a warm bath as his wife suggested.

Petitioner telephoned his wife again about 2:00 A.M. because it seemed Brandon had stopped breathing. He again told her not to leave work. He then gave Brandon a cool bath and the baby's breathing improved. About an hour and a half later, Petitioner telephoned his wife a third time, told her Brandon's breathing was erratic and asked her to come home.

When Ms. Bartlett arrived home at 6:00 A.M., she found both Brandon and Petitioner sleeping. She gave the baby a bath. Without waking up, the baby began to gasp for air. Ms. Bartlett awakened her husband, Petitioner, and told him to take the baby to the hospital, about a three-minute drive from their home. He refused and said he wanted to sleep. Brandon later stopped breathing normally and again gasped for air. Ms. Bartlett then insisted they take the baby to the hospital. Petitioner tried unsuccessfully to perform CPR on Brandon before they left.

When the emergency room admitting clerk at Highline Hospital asked Petitioner Bartlett what had happened, he replied, "The damn thing kept me up all night."[1] Brandon was then airlifted to Harborview Hospital in Seattle. The police questioned Petitioner. He said he had been feeding Brandon at 10:00 P.M. when the baby began to choke. He said he bounced Brandon off his hand for two seconds, and Brandon resumed eating.[2] He said he telephoned his wife at 1:00 A.M. when Brandon awoke and was breathing with difficulty. Petitioner said he did not call 911 because he did not believe he could afford the cost. He said the baby had not fallen and had not been bumped.

Petitioner Bartlett was later arrested and charged with second-degree assault and second-degree criminal mistreatment. Three physicians testified at trial—Dr. Kenneth Feldman, M.D., Dr. David W. Newell, M.D. and Dr. William Clark, M.D.

According to Dr. Feldman, who is board certified in

---

[1]April 3, 1991 Report of Proceedings at 598.

[2]April 3, 1991 Report of Proceedings at 549.

pediatrics, Brandon sustained severe head injuries consistent with dramatic acceleration and deceleration, such as when an infant, whose neck cannot support his head, is violently shaken. He concluded Brandon's injuries were not accidental. While Dr. Feldman said certain treatments can prevent some brain damage if administered promptly after such an incident, he could not say whether those treatments would have helped Brandon. He did say, however, that the risk of permanent brain injury was increased because Brandon did not receive prompt care.

According to Dr. Newell, a neurosurgeon, the force required to produce Brandon's injuries was equivalent to the force of a high-speed car accident or a fall from a window. He said Brandon would have been unconscious immediately after the incident. He also indicated the best chance to survive a severe head injury occurs when treatment is given promptly.

According to Dr. Clark, who is board certified in pediatric critical care medicine and anesthesiology, it possibly might have made a difference if Brandon had been taken to a hospital immediately after the incident.

On April 4, 1991, a jury found Petitioner Bartlett "guilty" of second-degree assault and second-degree criminal mistreatment. On April 23, 1991, Brandon died from his injuries. The State then on May 20, 1991 filed an information in the King County Superior Court charging Petitioner with murder in the second degree under RCW 9A.32.050(1)(b), based on the predicate felonies of second-degree assault and second-degree criminal mistreatment.

The State filed an amended information on July 22, 1991 that "more accurately reflects criminal conduct, charge, and lesser crime of manslaughter 1°." Petitioner waived a jury trial and proceeded to trial upon stipulation for admission in evidence of relevant police, autopsy and pathology reports, and testimony from his prior trial for second-degree assault and criminal mistreatment. On July 22, 1991 the Honorable R. Joseph Wesley found Petitioner "guilty" of murder in the second degree based upon the

predicate felony of second-degree assault.[3] The court initially concluded the State had not proved beyond a reasonable doubt that criminal mistreatment—withholding medical care—caused Brandon's death,[4] but later concluded to the contrary.[5]

The court imposed a sentence within the standard range for the criminal mistreatment conviction, but did not sentence Petitioner for the second-degree assault conviction, concluding that it merged with the murder conviction.[6] In a judgment and sentence signed August 8, 1991, the court imposed a sentence of 432 months for the second-degree murder conviction, which was above the standard range of 144 to 196 months.[7] As reasons justifying an aggravated exceptional sentence, the court concluded that Brandon was particularly vulnerable and that Petitioner exhibited callous disregard for human life indicative of an especially culpable mental state. In reaching the conclusion on Petitioner's mental state, the court relied mainly upon facts surrounding Petitioner's conviction in 1988 for second-degree assault upon his then two-month-old son, Adam, Jr., from which the infant suffered permanent brain damage. In its oral ruling, the court stated there was evidence of callous disregard

> . . . based upon the prior conviction, the general similarity of the crime, the failure of the defendant to be able to conform his behavior following his conviction for that crime, of inability of him to conform his behavior to appropriate standards, and the lack of the follow through once the injury in this case was inflicted. The attitude that was evidenced with it, statements and conduct of the defendant following

[3]July 22, 1991 Report of Proceedings at 54.

[4]July 22, 1991 Report of Proceedings at 53-54.

[5]July 25, 1991 Report of Proceedings at 39.

[6]July 25, 1991 Report of Proceedings at 39.

[7]Clerk's Papers at 7-12.

this incident, I think, are reflective of an enhanced culpability. . . .[8]

This reasoning was reflected in the court's written findings, which stated Petitioner Bartlett's "culpability is enhanced" by the fact that he had assaulted his other son.[9] The court found that Petitioner's "failure to conform his behavior after the prior episode when [he] knew of the fragility of children to such injuries is significant and not accounted for in the scoring of criminal history."[10]

On June 20, 1994, the Court of Appeals, Division One, affirmed Petitioner's convictions and sentences. We granted review on February 9, 1995.

DISCUSSION

Our order granted review "only on the issue of whether the trial court violated the Sentencing Reform Act in treating the facts underlying petitioner's 1988 assault conviction as a reason for imposing an exceptional sentence for the present murder conviction."

RCW 9.94A.210(4) governs review of sentences imposed by the trial court outside the standard sentence range:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

Petitioner Bartlett contends the reasons given by the trial court do not justify the sentence he received. The court may impose a sentence outside the standard range if it finds, consistent with the purpose of the Sentencing Reform Act of 1981 (SRA), there are "substantial and com-

---

[8]July 25, 1991 Report of Proceedings at 31-32.

[9]Clerk's Papers at 11.

[10]*Id.*

pelling reasons justifying an exceptional sentence."[11] The SRA provides a nonexclusive list of aggravating and mitigating circumstances "which the court may consider in the exercise of its discretion to impose an exceptional sentence."[12] One of the aggravating circumstances is that "[t]he defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health."[13]

A trial court is given limited discretionary authority to impose an exceptional sentence under the Sentencing Reform Act:

> The purpose of the Sentencing Reform Act of 1981 (SRA) is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences. RCW 9.94A.010. This is to be accomplished in part by ensuring punishment is proportionate to the seriousness of the offense and the offender's criminal history, by promoting respect for the law by providing just punishment, and by protecting the public. [Citation omitted.][14]

In imposing an aggravated exceptional sentence of 432 months, the trial court gave two reasons: (1) Petitioner Bartlett's enhanced culpability and (2) particular vulnerability of the infant victim.[15] The "particular vulnerability" of the child, Brandon, because of his infancy is

---

[11]RCW 9.94A.120(2).

[12]RCW 9.94A.390.

[13]RCW 9.94A.390(2)(b).

[14]*State v. Pryor*, 115 Wn.2d 445, 449-50, 799 P.2d 244 (1990).

[15]Clerk's Papers at 11.

not at issue.[16] The only issue is the trial court's finding of Petitioner's "enhanced culpability."

## ENHANCED CULPABILITY

Petitioner Bartlett contends the trial court erred in relying on the facts underlying his 1988 assault conviction to show "enhanced culpability" as a basis for an aggravated exceptional sentence for his offense of second-degree murder. Criminal history is already taken into account in computing the offender score for sentencing purposes and therefore may not be considered in imposing a sentence outside the presumptive range.[17]

The Court of Appeals concluded the trial court properly considered facts underlying Petitioner's prior conviction as a basis for imposing an aggravated exceptional sentence. It noted that, although "callous disregard" is not a proper aggravating factor to the extent it is used synonymously with "future dangerousness" or is implicit in the facts of an assault which inflicts fatal injuries, the trial court used "callous disregard" only as establishing an unusually high degree of mental culpability.[18] The court concluded that, in this context, the trial court properly "relied upon Bartlett's 'special knowledge' of the vulnerability of infants that he gained from being convicted for similar assaultive conduct toward his other son which caused the child catastrophic injuries."[19] This knowledge, the court said, "is not a prohibited basis for an exceptional sentence, even though the 1988 conviction was used in calculating his of-

---

[16]The trial court found that "Brandon was particularly vulnerable to this assault by the defendant by virtue of his size and age. In addition, the victim was particularly vulnerable to the extent that he relied on the defendant to seek prompt medical attention." Clerk's Papers at 11. Petitioner raised the issue of particular vulnerability in his petition for review, claiming it inheres in the offense of criminal mistreatment for which he was also convicted. However, this Court found no merit to that argument and granted review excluding the issue.

[17]*State v. Barnes*, 117 Wn.2d 701, 706, 818 P.2d 1088 (1991).

[18]*State v. Bartlett*, 74 Wn. App. 580, 591, 875 P.2d 651 (1994).

[19]*Id.* at 592.

fender score, because in that calculation only the fact of conviction was used."[20]

In support of its holding, the Court of Appeals relied on *In re Farmer*.[21] In a personal restraint petition, the defendant challenged the 90-month exceptional sentence he received for two counts of sexual exploitation of a minor and two counts of patronizing a juvenile prostitute. This Court in a per curiam opinion concluded the defendant's reckless disregard for lives of juvenile prostitutes while knowing or believing he had AIDS was an "especially culpable mental state" justifying imposition of an exceptional sentence.[22] This is so, said the court, "even though the conduct also might be an element of an additional uncharged crime."[23] The court in *Farmer* held that "[a] defendant's 'especially culpable mental state' is a valid aggravating factor notwithstanding the 'real facts' doctrine of RCW 9.94A.370(2)."[24] The Court of Appeals in this case construed the ruling in *Farmer* "as permitting use of evidence pointing to a defendant's especially culpable mental state even when such evidence includes facts from prior convictions used to calculate that defendant's offender score."[25]

---

[20]*Id.*

[21]119 Wn.2d 597, 835 P.2d 219 (1992).

[22]*Farmer*, 119 Wn.2d at 599.

[23]*Id.*

[24]*Id.* The "real facts" doctrine is stated in RCW 9.94A.370(2), which provides:

In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. . . . Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range except upon stipulation or when specifically provided for in RCW 9.94A.390(2)(c), (d), and (e).

The real facts doctrine bars consideration of unproven or uncharged crimes in imposing an exceptional sentence. *State v. McAlpin*, 108 Wn.2d 458, 466, 740 P.2d 824 (1987). It therefore does not apply in this case where the trial court considered facts surrounding a crime for which Petitioner was convicted. This was not an uncharged crime.

[25]*Bartlett*, 74 Wn. App. at 593.

██ ██ We do not give such a broad interpretation to *Farmer* and do not rely upon it in reaching our conclusion in this case. Prior convictions are already accounted for in calculating the offender score and should not be counted a second time in imposing a sentence outside the standard range.[26] But while courts may not use the fact of a prior conviction alone to justify an exceptional sentence, there is no prohibition against drawing from the facts of a prior conviction, if they relate to the present case, to show extraordinary circumstances justifying a departure from the standard range. A reason offered by a sentencing court in imposing an exceptional sentence is acceptable if it considers factors other than those already considered in calculating the standard range for the offense.[27]

In examining the factors considered in Petitioner Bartlett's case, a distinction can be made between merely considering the fact of the prior conviction and considering the particularized knowledge gained by Petitioner from the circumstances upon which the prior conviction was based. The primary consideration for the exceptional sentence was not the fact of the prior conviction, but a recognition that the injury Petitioner inflicted upon his older son, Adam, Jr., put him on special notice of the serious risk to infants which he disregarded when he shook his younger son, Brandon, with violent force. From these circumstances, the trial court concluded Petitioner evidenced an especially culpable mental state to an extent not considered in calculating his offender score.

Basing an exceptional sentence upon the defendant's state of mind was upheld in *State v. Nordby*.[28] The defendant in that vehicular assault case grabbed the steering

---

[26]*Barnes*, 117 Wn.2d at 706.

[27]*State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986); *State v. Fisher*, 108 Wn.2d 419, 424, 739 P.2d 683 (1987).

[28]*Nordby*, 106 Wn.2d 514. Likewise, in *State v. Creekmore*, 55 Wn. App. 852, 859-63, 783 P.2d 1068 (1989), *review denied*, 114 Wn.2d 1020 (1990), the defendant's lack of remorse and increased culpability resulting from his abuse of parental trust were relied upon as factors which supported an exceptional sentence.

wheel from the driver of the automobile in which he was a passenger and steered it toward the victim. In upholding an aggravated exceptional sentence, this Court concluded the defendant acted intentionally, rather than merely recklessly, and held his "especially culpable mental state" was a substantial and compelling reason to depart from the standard range.[29] This is sound reasoning.

Petitioner Bartlett knew from personal experience involving his older infant son that infants are particularly vulnerable to head injuries and can sustain permanent brain damage if struck or violently shaken. Yet he assaulted his younger son, Brandon, inflicting severe head injuries which resulted in the baby's death. Under *Nordby*, Petitioner's especially culpable state of mind is a substantial and compelling reason which justifies an aggravated exceptional sentence above the standard sentence range.

Petitioner Bartlett contends that consideration of enhanced culpability as an aggravating factor unjustifiably focuses on the offender rather than the crime for which he was convicted, and is therefore inconsistent with the goal of standardized sentencing to provide "equality of incarceration time depending on the crime."[30] He cites *In re Mota* for its criticism of the previous indeterminate sentencing system, which focused on rehabilitation by basing sentences upon a defendant's characteristics instead of upon the nature of the crime. The court in *Mota* merely concluded that since rehabilitation of offenders is not a substantial interest under the Sentencing Reform Act, it cannot justify disparate treatment of offenders.[31] That case does not lend support to Petitioner's argument against consideration of enhanced culpability.

Petitioner further contends that comments by the judge

---

[29]*Id.* at 518-19.

[30]Supplemental Br. of Pet'r at 6 (quoting *In re Mota*, 114 Wn.2d 465, 476, 788 P.2d 538 (1990)).

[31]*Id.* at 476.

at sentencing indicate the judge's personal dissatisfaction with the presumptive range for Petitioner's crimes. He cites *State v. Pascal*[32] for the proposition that a sentencing court's subjective determination that a standard range sentence will not adequately advance the SRA's purposes is not a substantial and compelling reason for imposing an exceptional sentence. In Petitioner's case, however, the trial court made its determination for reasons amply supported by the record, and in recognition of aggravating factors not computed into the presumptive range under the SRA. Petitioner's claim is without merit.

Petitioner Bartlett cites two Minnesota cases to advance his argument that a court may not rely on a qualitative analysis of prior convictions to justify an exceptional sentence.[33] In neither of those cases, however, did the trial court relate the particular circumstances of the prior offenses to those of the current one to show the defendant had an especially culpable mental state. We are not persuaded by those cases.

Petitioner cites *State v. Handley*[34] for the proposition that an exceptional sentence is justified only where the actual circumstances of the crime distinguish it from other crimes within the same statutory category. That is not consistent with our conclusion in *Handley*. Actually we concluded in that case that the statute, RCW 9.94A.370, does not limit the sources of information a sentencing court may consider and that consideration of sources other than plea statements, presentence reports, and evidence admitted at trial or at sentencing will enable the court to learn of particular circumstances surrounding the crime

[32] 108 Wn.2d 125, 736 P.2d 1065 (1987).

[33] *State v. Higginbotham*, 348 N.W.2d 327 (Minn. 1984); *State v. Magnan*, 328 N.W.2d 147 (Minn. 1983).

[34] 115 Wn.2d 275, 796 P.2d 1266 (1990).

for purposes of determining whether an exceptional sentence is justified.[35]

SUMMARY AND CONCLUSIONS

Under RCW 9.94A.120(2), the trial court may impose a sentence outside the standard range if it finds there are "substantial and compelling reasons" justifying it consistent with the purpose of the Sentencing Reform Act. The SRA provides a nonexclusive list of aggravating factors the court may consider in exercising its discretion to impose a sentence above the standard range.

In sentencing Petitioner Bartlett to serve 432 months for his second-degree murder conviction, the trial court exceeded the standard range of 144 to 196 months for that offense. To justify this departure, the court relied not only upon the particular vulnerability of the infant victim, but also upon facts underlying Petitioner's 1988 assault conviction, to establish his especially culpable mental state at the time of the present offense. Petitioner contends such a determination violates the Sentencing Reform Act because criminal history is already computed into the offender score and therefore may not be considered again in imposing a sentence above the standard range. We do not agree.

The primary consideration justifying the aggravated exceptional sentence was not the fact of Petitioner's prior conviction. The sentence represented the trial court's recognition that Petitioner had special knowledge of the particular vulnerability of infants which he gained from his prior conviction for assault upon his older infant son. The court found that because of this particularized knowledge, Petitioner had "enhanced culpability" in the case for which he is being sentenced, a factor not already considered in calculating his offender score. The trial court's ruling is supported by *State v. Nordby*, which held that a defendant's especially culpable mental state is a valid fac-

---

[35]*Id.* at 282.

tor in imposing an aggravated exceptional sentence. The trial court did not violate the Sentencing Reform Act.

We affirm the decision of the Court of Appeals upholding the ruling of the King County Superior Court which imposed an aggravated exceptional sentence upon Petitioner Adam L. Bartlett for his second-degree murder conviction for the death of his infant son, using facts underlying his prior conviction for assault upon his older infant son to support the aggravating factor of "enhanced culpability" under the Sentencing Reform Act.

DURHAM, C.J., DOLLIVER and TALMADGE, JJ., and PEKELIS, J. Pro Tem., concur.

MADSEN, J. (concurring) — I agree with the majority that the trial court had a proper basis upon which to impose an exceptional sentence. *See* RCW 9.94A.390(2)(b). However, I write separately because I believe the majority goes too far. It concludes that a trial court may rely on facts from an offender's prior conviction to show enhanced culpability to justify departing upward from the presumptive sentencing range. This conclusion is not supported by the Sentencing Reform Act of 1981 (SRA) or case law.

The majority holds that "there is no prohibition against drawing from the facts of prior conviction, if they relate to the present case, to show extraordinary circumstances" as grounds to justify departing from the presumptive range. Majority at 333. It reasons that Bartlett was put on "special notice" from the circumstances of his prior assault conviction and that this particular knowledge "evidenced an especially culpable mental state to an extent not considered in calculating his offender score." Majority at 333. The presumptive sentence range takes "into account the particular offense and the extent and nature of the offender's criminal history, including the seriousness of any prior offenses and whether or not they were violent in nature." *State v. Hartley*, 41 Wn. App. 669, 671, 705 P.2d 821, *review denied*, 104 Wn.2d 1028 (1985); *see also*

*State v. Nordby*, 106 Wn.2d 514, 518 n.4, 723 P.2d 1117 (1986). Accordingly, reasons for imposing an exceptional sentence "must take into account factors other than those which are necessarily considered in computing the presumptive range for the offense." *Id.* at 518; *see also State v. Collicott*, 118 Wn.2d 649, 661, 827 P.2d 263 (1992); *State v. Barnes*, 117 Wn.2d 701, 706, 818 P.2d 1088 (1991); *State v. Batista*, 116 Wn.2d 777, 788, 808 P.2d 1141 (1991).

Without explanation, the majority maintains that a distinction can be drawn between "merely considering the fact of the prior conviction and considering the particularized knowledge gained by Petitioner from the circumstances upon which the prior conviction was based." Majority at 333. It insists that basing an exceptional sentence on a defendant's state of mind is supported by case law, citing a single case, *State v. Nordby*, 106 Wn.2d 514, 723 P.2d 1117 (1986). Unfortunately, it misreads *Nordby*.

In *Nordby*, this Court affirmed the trial court's exceptional sentence, in part, on grounds of Nordby's "especially culpable mental state at the time" that he committed the vehicular assault. 106 Wn.2d at 518-19. The requisite mental state for vehicular assault is either recklessness or intoxication. RCW 46.61.522(1)(a) and (b). The Court found that not only had the minimum standard for vehicular assault been met, but Nordby's conduct of intentionally grabbing the steering wheel of the automobile and turning it toward the victim demonstrated a more serious mental state than the Legislature contemplated for a violation of the vehicular assault statute. 106 Wn.2d at 519. In RCW 9A.08.010(1)(a)-(d) the Legislature has defined four levels of culpability: intent, knowledge, recklessness, and criminal negligence. *See State v. Allen*, 101 Wn.2d 355, 359, 678 P.2d 798 (1984) (Legislature created four levels of culpability establishing hierarchy of mental states for crimes of increasing culpability). Because Nordby's intentional conduct went beyond that which the Legislature required under the vehicular assault statute, the *Nordby* court was justified in exceeding the presumptive range.

In contrast here, Bartlett was found guilty of murder in the second degree predicated on the felony of second degree assault. Report of Proceedings (July 22, 1991) at 54; *see also* RCW 9A.32.050(1)(b) and RCW 9A.36.021. A person is guilty of murder in the second degree when "[h]e commits or attempts to commit any felony other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime . . . causes the death of a person . . . ." RCW 9A.32.050(1)(a). Where an individual "[i]ntentionally assaults another and thereby recklessly inflicts substantial bodily harm" he or she is guilty of assault in the second degree. RCW 9A.36.021(1)(a). Consequently, because intent is the requisite mental state of the offense of assault in the second degree, Bartlett does not have a more culpable mental state than the Legislature requires for proof of the crime. Thus, the majority's conclusion that Bartlett had enhanced culpability is not supported by *Nordby*.

Cases which truly are analogous compel a different result than the majority reaches in its mistaken reliance on *Nordby*. *See, e.g., State v. Dunaway*, 109 Wn.2d 207, 743 P.2d 1237 (1987), 749 P.2d 160 (1988) (planning is inherent in the premeditation element of first degree murder, thus may not be used to justify an exceptional sentence for the crime of first degree murder); *State v. Falling*, 50 Wn. App. 47, 747 P.2d 1119 (1987) (threatening to use a knife during the commission of first degree rape is an element of that crime and may not serve to justify an exceptional sentence); *State v. Baker*, 40 Wn. App. 845, 700 P.2d 1198 (1985) (sophistication and planning are elements of first degree prison escape and thus may not be used to justify an exceptional sentence).

The majority's finding that a trial court may draw on facts underlying a prior conviction to show enhanced culpability is inconsistent with reliance on RCW 9.94A.390(2)(b). Pursuant to RCW 9.94A.390(2)(b), an exceptional sentence is justified where "[t]he defendant knew or should have known that the victim of the current

offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health." RCW 9.94A.390(2)(b). In the present case, the trial court properly relied on this section to depart from the presumptive sentencing range. The Court of Appeals correctly noted, "A three-week-old child is a classic illustration of a vulnerable victim." *State v. Bartlett*, 74 Wn. App. 580, 593, 875 P.2d 651 (1994). Yet, while the majority upholds the trial court's use of RCW 9.94A.390(2)(b) as one reason to depart from the presumptive range, it dismisses the child's vulnerability due to infancy when assessing the Defendant's "special notice." Majority at 333.

Underlying the aggravating factor of a victim's extreme youth is the requirement that the offender knew or should have known of this vulnerability. The majority uses the Defendant's knowledge twice, first to affirm the trial court's finding under RCW 9.94A.390(2)(b) that an exceptional sentence is justified based on the victim's vulnerability, and then as a basis to find some undefined enhanced mental culpability. This holding goes beyond what is justified by the SRA.

Moreover, this holding is illogical. It simply is indisputable that infants are particularly vulnerable and incapable of resisting physical abuse. No special knowledge is required at all, and it makes absolutely no difference whether there has been a prior assault against an infant.

When the majority's analysis is stripped to its roots it is clear that the majority is simply punishing the Defendant more harshly because he committed this sort of crime before. However, "the sentencing judge may not list the offender's criminal history as a reason to justify an exceptional sentence since criminal history is one of the two components (the other being the seriousness of the offense) used to compute the presumptive range under RCW 9.94A.320." *Nordby*, 106 Wn.2d at 518 n.4. Because the Legislature has already provided that the Defendant's prior conduct be counted against him in determining the presumptive range the majority is doing precisely what the *Nordby* court forbade.

GUY, JOHNSON, and ALEXANDER, JJ., concur with MADSEN, J.