# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73350-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| PETERSON BARZIE, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 29, 2016 |
| | ) | |

LEACH, J. — Peterson Barzie appeals the exceptional sentence imposed by the trial court after a jury convicted Barzie of one count of harassment and two counts of felony harassment. He makes three challenges.

First, he correctly claims that the trial court impermissibly commented on the evidence with its instruction defining a "prolonged period of time." But the record affirmatively shows that this error could not have prejudiced Barzie.

Second, he contends that double jeopardy bars an exceptional sentence based on his earlier convictions because Barzie's offender score already reflected those offenses. We disagree because the circumstances of Barzie's earlier convictions, not the fact of those convictions, proved the aggravating factor found by the jury and relied on by the trial court to justify its sentence.

Third, he argues that the trial court violated his right to a trial by jury when it decided that the aggravating circumstance found by the jury provided a

"substantial and compelling reason" to impose an exceptional sentence. Our state Supreme Court rejected this argument in State v. Suleiman.[1]

We affirm.

## FACTS

Barzie and Amelia Sasu met in 2005 while Sasu was visiting Seattle from New York City. She returned to New York, and Barzie came to stay with her. They began a relationship. They remained in contact after Barzie left New York. Sasu moved to Seattle in 2007, and Barzie moved in with her in 2008. They argued and broke up frequently. They ended their relationship in 2013.

Sasu and Onoya Okonda began a relationship in the summer of 2014. Barzie called Okonda, said that he saw Okonda with Barzie's "girl," and threatened to shoot Okonda. Okonda did not think Barzie meant Sasu but someone else. On October 18, Okonda approached Barzie at a party. He started a fight by pushing Okonda. Friends kept the men apart. As Okonda left, Barzie waved a gun and yelled, "Whenever I see you, see what I'm gonna do to you."

On November 7, Barzie went to Sasu and Okonda's home and banged on the door. Okonda called 911, and Sasu went outside. She told Barzie to leave. Barzie lifted his shirt to show a gun in his waistband and said, "Well, I'm just

---

[1] 158 Wn.2d 280, 290, 143 P.3d 795 (2006).

gonna let you know the next time I see you and your boyfriend around in my territory, I'm gonna blow your head off." Sasu went inside and told Okonda about this.

The State charged Barzie with three counts of felony harassment for what he said to Okonda on October 18 (count 1) and what he said to Sasu about her and Okonda on November 7 (count 2 and count 3). At trial, Sasu described Barzie's harassment of and violence toward her from 2008 to 2014. Police responded to at least two of the incidences she described. Both Sasu and Okonda believed Barzie would kill them. A jury convicted Barzie of harassment, a lesser offense, for count 1, and as charged for count 2 and count 3.

The court then conducted an aggravator hearing, where the jury considered if "[t]he offense was part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple victims . . . over a prolonged period of time."[2] To prove this, the State presented certified copies of six judgments and sentences for earlier convictions involving Sasu. These included three domestic violence felony violations of a court order resulting in protection orders. Each counted toward Barzie's offender score.[3] The other earlier convictions admitted at the hearing, but not used in the offender score calculation, also involved Sasu. They were for domestic violence misdemeanor

---

[2] RCW 9.94A.535(3)(h)(i).
[3] See RCW 9.94A.525.

-3-

of a court order resulting in a no-contact order, domestic violence assault in the fourth degree, and violation of no-contact order and theft. Over objection, the trial court admitted the convictions, concluding that "a violation of a No-Contact order can be circumstantial evidence of that psychological component of that issue." The State argued to the jury that Sasu's testimony at trial proved the aggravating circumstance of domestic violence, confirmed by the conviction documents. The trial court instructed the jury that a "'prolonged period of time' means more than a few weeks." The jury returned a special verdict, finding that count 2 was an aggravated domestic violence offense.

Barzie had an offender score of four and faced a standard range sentence of 12 to 16 months on each felony conviction. The trial court imposed an exceptional sentence on count 2, concluding that the special verdict provided a substantial and compelling reason to do so. The trial court imposed a sentence of 364 days on count 1, an exceptional sentence of 40 months on count 2, and a standard range sentence of 16 months on count 3.

Barzie appeals the exceptional sentence.

STANDARD OF REVIEW

This court reviews the legal sufficiency of jury instructions de novo.[4] We review a claim based upon double jeopardy de novo.[5] And this court reverses a

---

[4] State v. Walker, 182 Wn.2d 463, 481, 341 P.3d 976, cert. denied, 135 S. Ct. 2844 (2015).

sentence outside the standard sentence range when it finds that (a) the record does not support the reasons given by the sentencing court or those reasons do not support a sentence outside the standard range or (b) the sentence imposed was clearly too excessive or too lenient.[6]

ANALYSIS

Barzie asserts that the trial court impermissibly commented on the evidence with its instruction defining a "prolonged period of time." In State v. Brush,[7] our Supreme Court held that the same instruction was an impermissible comment on the evidence. The State properly concedes error.

Washington courts presume that judicial comment on the evidence prejudices a defendant, and the State has the burden to affirmatively show that the error could not have prejudiced the defendant.[8] Barzie argues that the record does not affirmatively show the absence of prejudice and that this case is analogous to Brush. In that case, the court decided that the State had failed to show that the improper instruction did not prejudice Brush because the State presented evidence that the abuse at issue occurred over a two-month period.[9] The court concluded that "a straightforward application of the jury instruction

---

[5] State v. Fuller, 185 Wn.2d 30, 33-34, 367 P.3d 1057 (2016).
[6] RCW 9.94A.585(4).
[7] 183 Wn.2d 550, 558-59, 353 P.3d 213 (2015).
[8] State v. Levy, 156 Wn.2d 709, 723, 132 P.3d 1076 (2006).
[9] Brush, 183 Wn.2d at 558-59.

would likely lead a jury to conclude that the abuse in this case met the given definition of a 'prolonged period of time,'" relieving the State of its burden.[10]

Barzie notes that the State emphasized the improper instruction at the aggravator hearing and the incident at issue happened only 11 months after Barzie and Sasu's tumultuous relationship ended. During closing argument at the aggravator hearing, the State argued to the jury, "It's essentially what I just said in my opening. This has gone on for a long period of time. Your question is whether or not this went on longer than a few weeks. She testified it's been going on since 2007."

The State urges this court to find this case analogous to State v. Levy,[11] where the Supreme Court held that a comment on the evidence was not prejudicial. In Levy, the trial court instructed the jury on the elements of the crime at issue, including references to a "building, to-wit: the building of Kenya White," to a "deadly weapon, to-wit: a .38 revolver or a crowbar," and to "personal property to-wit: jewelry."[12] The court concluded that the references to the apartment as a building and the crowbar as a weapon constituted error because it established those elements of the crime as a matter of law.[13] The court concluded that because the defendant never challenged that the apartment

---

[10] Brush, 183 Wn.2d at 559.
[11] 156 Wn.2d 709, 726, 132 P.3d 1076 (2006).
[12] Levy, 156 Wn.2d at 716.
[13] Levy, 156 Wn.2d at 721-22.

constituted a building and because common sense permitted the conclusion, the jury could have concluded only that the apartment constituted a building and nothing else.[14] And because it found that Levy did not possess the crowbar, the record showed that he could not have been prejudiced if the jury erroneously concluded that the crowbar was a deadly weapon.[15]

The State claims that the record shows that no prejudice could have occurred. During the aggravator hearing, Barzie did not argue that the period of time in question was not a prolonged period of time. Instead, he argued that "[y]ou don't know the circumstances of how those violations of the No-Contact Order took place. . . . And so, you don't actually know that any of these convictions really in fact prove the pattern of ongoing psychological or physical abuse." He argued that the on-again-off-again nature of their relationship indicated that Sasu may have invited the contact and thus the violations of no-contact orders did not show abuse:

> The other thing I should note is the dates of a lot of these. You're gonna find a lot are from 2008. And then you're gonna find one for 2009 and I think there are two very close in time—or sorry—2009 and 2011. One from 2011. So, essentially then there's this stop gap from 2011 onward. . . . So, [the no-contact orders] are not always necessarily something that she wished or desired . . . [or] actual indications that she did not want to have contact with Mr. Barzie.

---

[14] Levy, 156 Wn.2d at 726.
[15] Levy, 156 Wn.2d at 726.

And he also argued that a pattern of abuse did not exist:

> The second thing that I wanted to raise is that there's been a break and there's been a break in the pattern. 2011 is when the convictions—the last conviction that you will receive . . . . Then there's a break, right? And so, we know from Ms. Sasu's testimony that yes there was some contact that she had—what was it, July 26, 2013. And then after that what we have is basically phone calls and then it stops as soon as she says, "If you call me again, I'll put you in jail." . . . So, the defense submits that this is not an ongoing pattern of psychological and physical abuse because there's been a break in the relationship and in the circumstances.

Barzie based his defense to the aggravator charge on his characterization of the type of contact between Barzie and Sasu and a claimed absence of evidence of a pattern of abuse. As in Levy, Barzie made no claim that his conduct did not occur over a prolonged period of time. Because evidence of the abuse dated back several years and because Barzie did not contest the prolonged period of time element of the alleged aggravating circumstance, when the jury found that Barzie's earlier contact with Sasu was domestic abuse, it could only have found that it was for a prolonged period of time. Thus, the trial court's comment could not have prejudiced Barzie.

Barzie next argues that the trial court placed him in double jeopardy when it imposed an exceptional sentence based on the same earlier domestic violence convictions used to calculate his offender score to determine his standard range sentence.

The state and federal constitutions prohibit placing an individual in jeopardy twice for the same offense.[16] A trial court imposing an exceptional sentence must justify that sentence with factors different than those necessarily considered when computing a defendant's offender score.[17] "Prior convictions are already accounted for in calculating the offender score and should not be counted a second time in imposing a sentence outside the standard range."[18] But the trial court may impose an exceptional sentence when it uses the circumstances of the earlier conviction and not the fact of the conviction itself as its justification.[19]

The imposition of an exceptional sentence involves a two-step process. A jury must first find beyond a reasonable doubt the existence of an aggravating factor. The trial court must then decide a legal question: does the factor found by the jury provide a substantial and compelling reason to depart from the standard sentence range?[20]

In State v. Bartlett,[21] the trial court imposed an exceptional sentence after convicting Bartlett of murder in the second degree based upon second degree

---

[16] State v. Kier, 164 Wn.2d 798, 803-04, 194 P.3d 212 (2008); Whalen v. United States, 445 U.S. 684, 688, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980); WASH. CONST. art. I, § 9; U.S. CONST. amend. V.

[17] State v. Barnes, 117 Wn.2d 701, 706, 818 P.2d 1088 (1991).

[18] State v. Bartlett, 128 Wn.2d 323, 333, 907 P.2d 1196 (1995).

[19] Bartlett, 128 Wn.2d at 336-37.

[20] RCW 9.94A.537(4)-(6).

[21] 128 Wn.2d 323, 327-28, 907 P.2d 1196 (1995).

assault and second degree criminal mistreatment of his infant child. The trial court concluded Bartlett's earlier conviction for second degree assault of another infant son supported a sentence above the standard range due to his enhanced culpability.[22] Bartlett challenged the exceptional sentence on the grounds that the trial court already used his criminal history to compute his offender score for sentencing purposes and so may not consider it to impose a sentence outside the presumptive range.[23] The Supreme Court affirmed Bartlett's conviction. It held that the trial court did not base its exceptional sentence upon its consideration of the earlier conviction itself but upon the particularized knowledge Bartlett had from the circumstances of the earlier conviction.[24] The earlier conviction, the court concluded, "put him on special notice of the serious risk to infants which he disregarded when he shook his younger son, Brandon, with violent force."[25] The Supreme Court held that the trial court did not err when it imposed an exceptional sentence based on Bartlett's especially culpable mental state.[26]

Barzie argues that unlike Bartlett, here the judgments and sentences do not contain underlying facts that the jury could use to find a "pattern of

---

[22] Bartlett, 128 Wn.2d at 328-29.
[23] Bartlett, 128 Wn.2d at 331.
[24] Bartlett, 128 Wn.2d at 336-37.
[25] Bartlett, 128 Wn.2d at 333.
[26] Bartlett, 128 Wn.2d at 336-37.

psychological, physical, or sexual abuse" in order to find the aggravating circumstance of domestic violence.[27]

To calculate Barzie's offender score, the trial court had to count Barzie's earlier felony convictions.[28] But the records of Barzie's earlier convictions for both felonies and misdemeanors provided different information for the jury. Because the earlier convictions all involved domestic violence against Sasu and spanned several years, from 2008 to 2011, they provided evidence that Barzie had engaged in an "ongoing pattern of psychological, physical, or sexual abuse over a prolonged period of time."[29]

Similar to Bartlett, where the earlier conviction provided evidence of Bartlett's mental state in order to prove the aggravating circumstance, here, the convictions provided evidence of Barzie's protracted abuse of Sasu and corroborated her testimony. Allowing the jury to consider the circumstances of the earlier offenses to find that Barzie had engaged in a pattern of abuse toward Sasu did not put Barzie in double jeopardy.

Finally, Barzie contends that the trial court engaged in judicial fact-finding when it determined that substantial and compelling reasons justified the exceptional sentence. The Sixth Amendment to the United States Constitution

---

[27] RCW 9.94A.535(3)(h)(i).
[28] RCW 9.94A.525.
[29] RCW 9.94A.535(3)(h)(i).

provides the accused with the right to a trial by an impartial jury. "This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt."[30] Any fact that increases the penalty for a criminal conviction beyond the statutory maximum must be proved to a jury beyond a reasonable doubt.[31]

In this case, the trial court followed the two-step process approved by the Washington Supreme Court in Suleiman.[32] We are bound by Suleiman. Barzie acknowledges this precedent but argues that it reflects an incorrect interpretation of dicta in Blakely v. Washington.[33] As the State asserts, Barzie presents an argument controlled by Supreme Court authority that this court must follow.[34]

## CONCLUSION

Although the trial court instruction defining "a prolonged period of time" improperly commented on the evidence, this error could not have prejudiced Barzie. Because the jury considered different information about Barzie's prior convictions than the trial court considered when calculating his offender score, the trial court did not place Barzie in double jeopardy. Finally, binding Supreme

---

[30] Alleyne v. United States, ___ U.S. ___, 133 S. Ct. 2151, 2156, 186 L. Ed. 2d 314 (2013).

[31] Hurst v. Florida, ___ U.S. ___, 136 S. Ct. 616, 621, 193 L. Ed. 2d 504 (2016) (quoting Apprendi v. New Jersey, 530 U.S. 466, 494, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)).

[32] Suleiman, 158 Wn.2d at 290.

[33] 542 U.S. 296, 305, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[34] State v. Gore, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

Court precedent holds that the trial court did not violate Barzie's right to a trial by jury when it decided that the aggravating circumstance found by the jury provided a "substantial and compelling reason" to impose an exceptional sentence. We affirm.

_____ Leach, J.

WE CONCUR:

_____ Trickey, ACJ

_____ Cox, J.